EDMUND D. CODMAN *vs.* NEW YORK, NEW HAVEN AND
HARTFORD RAILROAD COMPANY.

Suffolk.    January 27, February 12, 24, 1925. — June 27, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Boston Railroad Holding Company. Equity Jurisdiction,* To restrain
monopoly.

The enactment of St. 1909, c. 519, constituted in substance and effect
specific authority to the New York, New Haven and Hartford Railroad
Company to deal with stock in the Boston and Maine Railroad, owned
by it, as therein set forth.

Upon findings by a master in a suit in equity by a stockholder of the Boston
and Maine Railroad against the New York, New Haven and Hartford
Railroad Company, it was *held,* that contentions, that the Legislature
intended by St. 1909, c. 519, to prohibit the defendant from owning
indirectly the stock of the Boston and Maine Railroad through its
ownership of the stock of the Boston Railroad Holding Company or to
prohibit the defendant from exercising, in accordance with the statute,
its ownership of that stock, could not be sustained.

The provisions of G. L. c. 160, § 71, afford no foundation for the conten-
tions above described.

The provisions of St. 1909, c. 519, were not abrogated nor superseded by
St. 1914, c. 766.

A contention by the plaintiff in the suit above described, that St. 1909,
c. 519, is void because in violation of the Federal anti-trust act of 1890
and the Clayton anti-trust act of 1914, was without merit.

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Suffolk on June 16, 1923, by a stockholder of
the Boston and Maine Railroad, who alleged that he brought
the suit under the provisions of G. L. c. 160, § 252, seeking
that the defendant be "enjoined from voting or in any other
way utilizing the stock of the Boston Railroad Holding
Company owned by it in such manner or form as would effect
or have a tendency to effect any control over or deciding in-
fluence upon the administration of the stock of the Boston
and Maine Railroad owned by said Holding Company that
would amount to the exercise or an attempted exercise of
any control whatsoever over the corporate acts of the Boston

and Maine Railroad in violation of the General Laws of this Commonwealth, as the same is now contemplated and intended by said respondent The New York, New Haven and Hartford Railroad Company"; and that "immediately upon the assignment to, or upon the order of the defendant The New York, New Haven and Hartford Railroad Company of the stock owned by it in the Boston Railroad Holding Company by the board of Federal trustees as hereinbefore set forth, the said defendant The New York, New Haven and Hartford Company or its order shall be required and directed to forthwith assign and transfer all of the stock of the Boston Railroad Holding Company owned by it and so received from said board of Federal trustees to a board of not less than three trustees appointed by this court for the purpose of holding and administering said stock with due regard for the interest of the said defendant The New York, New Haven and Hartford Railroad Company, but in strict accordance with and in complete obedience to all and every appropriate provision of the laws of this Commonwealth."

The suit was referred to a master. Material findings by the master are described in the opinion. By order of *Wait*, J., the suit was reserved for determination by this court upon the pleadings and the master's report.

*H. S. Davis*, for the defendant.

*C. W. Crooker*, for the plaintiff, submitted a brief.

RUGG, C.J. This suit in equity is brought by a stockholder in the defendant corporation to restrain alleged violations of law proposed by it. It is assumed in favor of the plaintiff, but without so deciding, that he is authorized to institute such suit by G. L. c. 160, § 252.

The case was referred to a master. The pertinent facts as alleged and found, succinctly stated, are these: — The defendant is incorporated under the laws of the State of Connecticut and of this Commonwealth and at the time of the institution of this suit and for a long time hitherto has owned and operated a railroad within this Commonwealth. In 1906 the defendant acquired a majority of the stock of the Boston and Maine Railroad, a corporation also owning and operating a railroad in this Commonwealth at all times material

to this suit. When this fact was called to the attention of the General Court, it enacted St. 1907, c. 585, §§ 1, 2 (see now G. L. c. 160, § 71) which in sweeping terms forbade such an acquisition of stock after the passage of the act, and further forbade any such corporation holding such stock from voting on the same until July 1, 1908. After full consideration by the General Court of the question whether such acquisition of the stock in the Boston and Maine Railroad by the defendant was in the public interest, St. 1909, c. 519, was enacted. Thereby the Boston Railroad Holding Company was incorporated for the declared "sole purpose of acquiring and holding the whole or any part of the capital stock . . . of the Boston and Maine Railroad, and of voting upon all certificates of stock so acquired and held." It further was provided by that act that "The stock of the Boston and Maine Railroad which may be acquired by said Boston Railroad Holding Company shall not be sold by it without express authority from the Legislature"; and that "Any railroad corporation incorporated at the date of the passage of this act under the laws of this Commonwealth may guarantee the principal of and the dividends and interest upon the capital stock . . . of said Boston Railroad Holding Company, and may acquire and hold said stock . . . provided however, that the shares of stock of said Boston Railroad Holding Company shall not be sold or transferable until said stock has been guaranteed as hereinbefore provided. Any railroad corporation acquiring said stock . . . shall not thereafter sell the same without the express authority of the Legislature." A suit then pending by the United States against the defendant in a Federal court, designed to terminate its relations with the Boston and Maine Railroad, was thereupon dismissed by the Attorney General of the United States and thereafter, pursuant to said c. 519, the defendant transferred its two hundred twenty-five thousand seven hundred and thirty-two shares of the capital stock in the Boston and Maine Railroad to the Boston Railroad Holding Company (hereinafter called the Holding Company) which are the same shares ever since held by it although now, due to reorganization and consolidation, they constitute twenty-

eight and three tenths per cent instead of a majority of such capital stock. The defendant owns all the common stock and two hundred forty-four thousand nine hundred and thirty-nine out of a total of two hundred seventy-two thousand nine hundred and thirty-nine shares of the preferred stock of the Holding Company. Through ownership of stock in the latter corporation its shares of stock in the Boston and Maine Railroad were voted by the defendant in the years 1910 to 1913 inclusive. Thereafter the United States brought suit against the defendant in a Federal court to determine its relation with other corporations including the Boston and Maine Railroad, wherein decree was entered in October, 1914, directing the defendant to assign its shares in the Holding Company to certain named trustees, and such assignment was made accordingly. The trustees were required, pending the final consummation of the purposes to be accomplished by the decree, to hold the shares of stock and act with respect to them with a view to securing to the Boston and Maine Railroad a management solely in its own interest, as distinguished from that of the New York, New Haven and Hartford Railroad Company, with due regard for the public interest and with substantial representation to minority stockholders of the Boston and Maine Railroad. Without reciting in detail the decrees and modifications thereof entered in that suit, it is enough to say that the trustees were originally directed to sell the stock in the Boston and Maine Railroad owned by the Holding Company upon stipulated conditions but that no such sale was made, apparently because it was not reasonably practicable, and that in June, 1923, decree was entered dissolving the trusteeship in so far as stock in the Holding Company was concerned, and directing the trustees to assign and deliver all stock of the Holding Company held by them to or upon the order of the defendant, subject to the provisions of St. 1909, c. 519, and the statutes of this Commonwealth.

Up to 1922 there had been no contest by the defendant touching any of the affairs of the Boston and Maine Railroad. Since then it has endeavored to secure a representation on

its board of directors and at the annual meeting of 1924 two persons proposed by the Holding Company were elected to the board composed of seventeen members. With respect to its policies, officers of the defendant have taken a position not altogether in harmony with that of a majority of the stockholders of the Boston and Maine Railroad. There are divergent opinions among its stockholders as to the general policies which ought to be pursued by the Boston and Maine Railroad, whether by consolidation with any other company or companies and in other respects. It is not necessary to state these views.

With respect to the attitude of the defendant and its officers concerning representation on the board of directors of the Boston and Maine Railroad, the master finds: "The New Haven Railroad desired proportional representation on the board of directors of the Boston and Maine in order that it might be helpful to the Boston and Maine in promoting the interests of both Companies so that they might be of mutual advantage, but not of disadvantage to either, and that it might lawfully participate in the considerations in regard to consolidation, and that as a minority holder of the stock of the Boston and Maine it did not expect to secure control of the Boston and Maine road. The officers of the respondent Railroad believed that as they were the indirect owners of twenty-eight and three tenths per cent of the stock of the Boston and Maine, and as they had an investment indirectly in the Boston and Maine Railroad of about $27,000,000, that they had the right to have proportionate representation upon the board so that they might follow the activities of the Boston and Maine Railroad and to see to it that the investment was not depleted, and that by that means they could watch the financial situation of the Boston and Maine and give attention to the situation, and if possible aid in devising means practicable for the assistance and coöperation both in increasing Boston and Maine revenues and otherwise financing its requirements. I find that the respondent did have this large financial interest in the Boston and Maine, and that it was the duty of the directors of the New Haven to see to it

that its investment was protected, and that they would not have been faithful to their trust had they not attempted to do everything possible to see to it that the Boston and Maine was a paying proposition, provided what they did could be lawfully done."

The Boston and Maine Railroad was not lawfully leased, owned or operated by the defendant prior to May 1, 1907, and the two have never been consolidated. There has been no specific authority by law relieving the Boston and Maine Railroad or the defendant from the operation of the restrictive and limiting provisions of G. L. c. 160, § 71, unless as matter of law such authority is contained in St. 1909, c. 519.

The prayers of the bill are (1) that the defendant and its officers be permanently restrained from voting or utilizing the stock of the Holding Company in such manner as to have any tendency to effect a control over the corporate acts of the Boston and Maine Railroad "in violation of the General Laws of this Commonwealth, as the same is now contemplated and intended" by the defendant: — and (2) that the defendant be required to assign all its stock in the Holding Company to trustees to be appointed by the court to be by them held and administered with due regard to the interests of the defendant but in strict accordance with the laws of the Commonwealth.

The acquisition of the stock of the Boston and Maine Railroad by the defendant in 1906 was *ultra vires* the defendant. *Attorney General* v. *New York, New Haven & Hartford Railroad,* 198 Mass. 413. The allegations of the present bill are not founded on that acquisition. The plaintiff both by his bill and by express statement in his brief relies wholly upon G. L. c. 160, § 71, being in substance a reënactment of St. 1907, c. 585, §§ 1, 2. The latter statute was by express terms prospective only in its operation. It did not purport to apply to purchases of stock made prior to its enactment.

The Legislature by St. 1909, c. 519, dealt comprehensively with the whole subject of the relation of the defendant to its stock in the Boston and Maine Railroad. The purpose of that act was to divest the defendant of direct ownership of that stock and to cause it all to be owned by the Holding

Company.   The powers of that company are specific.   They include all the ordinary powers of owners of capital stock in a corporation except so far as therein limited.   One of the definite powers conferred is that of voting upon the stock of the Boston and Maine Railroad owned by it.   That imports, in view of all the provisions of the act, power to exercise the judgment commonly exercised by a stockholder as to the election of officers, the formulation of policies and the other corporate management.   The findings of the master are explicit to the effect that both St. 1907, c. 585, §§ 1, 2, (now G. L. c. 160, § 71,) and St. 1909, c. 519, were enacted with special reference to the ownership of stock in the Boston and Maine Railroad by the defendant.   Together they constitute the legislative plan on that subject.   It is impossible in view of these findings and of the terms of the statute to hold that the Legislature intended to prohibit the defendant from owning indirectly the stock of the Boston and Maine Railroad through its ownership of the stock of the Holding Company or to prohibit the defendant from exercising its ownership of the stock in the Boston and Maine Railroad in accordance with St. 1909, c. 519.   The enactment of St. 1909, c. 519, constituted in substance and effect specific authority to the defendant to deal with its stock in the Boston and Maine Railroad as therein set forth.

The plaintiff has not argued and could not well argue that that statute violated any of his constitutional rights.

The provisions of G. L. c. 160, § 71, afford no foundation for the plaintiff's contentions.

The provisions of St. 1909, c. 519, were not abrogated or superseded by St. 1914, c. 766.   That was a purely permissive statute.   It was in no sense mandatory.   Read in connection with the proceedings in the Federal court set forth at some length in the master's report, it seems clearly designed to be supplementary to said c. 519, and to aid the defendant in attempting to comply with arrangements made by it with the representatives of the government of the United States and to enable it to comply with an anticipated decree of the Federal court.   It constituted an assent by this Commonwealth to the sale of the stock of the defendant in

the Holding Company and to the sale of the stock in the Boston and Maine Railroad owned by the Holding Company. Under the terms of said c. 519 a sale of neither of these stocks could be made without the consent of the Commonwealth.

The enactment of St. 1914, c. 766, did not constitute a contract between the Commonwealth and the defendant whereby the terms of St. 1909, c. 519, were waived or abrogated. Comparison of said c. 766 with the decree of the Federal court of October, 1914, shows that the former was designed to enable the defendant to yield obedience to such decree without infraction of the laws of this Commonwealth. But that statute neither in form nor substance compelled the defendant to carry out the terms of the "Boston & Maine Trust Agreement," made a part of that statute.

The argument of the plaintiff that St. 1909, c. 519, is void because in violation of the Federal anti-trust act of 1890 and the Clayton anti-trust act of 1914 is without merit on several grounds. The point is not open on this record. It is manifest that the bill is not framed on any such theory. It further is plain that the trial before the master was not directed to any such inquiry. This record contains no facts upon which to predicate any such violation. The record does not disclose restraint of interstate commerce or attempts at monopoly, but on the contrary shows that no such issue was raised or tried. If any inference at all were to be drawn, it would seem that the decree of the Federal court of June, 1923, ordering the assignment of the stock in the Holding Company to or upon the order of the defendant was an indication that that court was satisfied that there had been no violation of Federal law. It would require strong grounds to warrant a setting aside of a statute of this Commonwealth because of repugnancy to the terms of a Federal statute operative and supreme within its sphere. Every rational presumption is made in favor of the validity of a statute duly enacted by the General Court. Its enforcement will not be refused unless it is incapable of rational construction in harmony with the Federal law. *Perkins* v. *Westwood,* 226 Mass. 268, 271. *Attorney General* v. *Pelle-*

*tier*, 240 Mass. 264, 299. *Commonwealth* v. *Slavski*, 245 Mass. 405, 418.

Where a party seeks relief for violation of the Sherman anti-trust act or of the Clayton act, he must address a court of the United States and not of a State. *General Investment Co.* v. *Lake Shore & Michigan Southern Railway*, 260 U. S. 261, 287.

> *Decree to be entered dismissing bill with costs.*