THE DELAWARE AND HUDSON COMPANY & others *vs.*
BOSTON RAILROAD HOLDING COMPANY & others.

Suffolk.    April 5, 1948. — October 4, 1948.

Present: QUA, C.J., DOLAN, SPALDING, & WILLIAMS, JJ.

*Boston Railroad Holding Company. Corporation,* Dissolution, Charter.
*Constitutional Law,* Obligation of contracts, Due process of law, Police
power, Equal protection of laws.

Statute 1909, c. 519, incorporating Boston Railroad Holding Company,
and St. 1910, c. 639, authorizing it to issue preferred stock, by reason
of § 2 of St. 1903, c. 437, did not, separately or together, create a
contract between the Commonwealth and the holding company or the
New York, New Haven and Hartford Railroad Company, or both of
them, which would be unconstitutionally impaired by St. 1946, c. 518,
dissolving the holding company.

In the circumstances, the provision of St. 1946, c. 518, § 4, that in the
dissolution of Boston Railroad Holding Company and distribution of
its assets, no distribution in kind or sale of stock of the Boston and
Maine Railroad shall be made unless the department of public utilities
shall have furnished to the court satisfactory evidence showing that
no distributee or purchaser (other than the Boston and Maine Rail-
road itself) shall hold stock carrying more than five per cent of the
total voting power to which shareholders of Boston and Maine Railroad
shall then be entitled, was permissible regulation under the general
powers of the Legislature, the so called police power, and was not a
taking of property without compensation or without due process of law.

The mere facts, that Pennroad Corporation, not shown to have been in-
corporated in this Commonwealth, held approximately nineteen per
cent of the voting power in the Boston and Maine Railroad as against
approximately twenty-six per cent controlled by the New York, New
Haven and Hartford Railroad Company through its ownership of all
the common stock in Boston Railroad Holding Company and the
holding company's ownership of stock in the Boston and Maine Rail-
road, and that Pennroad Corporation was not, as was the New York,
New Haven and Hartford Railroad Company, affected by the pro-
vision of St. 1946, c. 518, § 4, restricting the quantity of Boston and
Maine Railroad voting stock which might be held by a distributee or
purchaser of that stock in liquidation of the holding company, did not
render the statute unconstitutional as denying equal protection of the
laws to the New York, New Haven and Hartford Railroad Company.

PETITION, filed in the Supreme Judicial Court for the
county of Suffolk on July 3, 1947.

The case was heard by *Ronan*, J., and by him was reported and reserved for consideration of the full court.

*H. D. McLellan & R. Ely*, (*H. V. Atherton* with them,) for the petitioners.

*J. L. Hall & R. Wait*, (*C. W. Oberdorfer* with them,) for Boston Railroad Holding Company and New York, New Haven and Hartford Railroad Company.

*G. B. Rowell*, Assistant Attorney General, (*C. A. Barnes*, Attorney General, & *R. H. Parker*, Assistant Attorney General, with him,) for the Commonwealth.

QUA, C.J.   This petition was brought in this court by holders of so called "publicly held" preferred stock of the respondent Boston Railroad Holding Company, hereinafter called the holding company, against that company and the Commonwealth for the purpose of securing the appointment of a receiver to liquidate the affairs of the holding company, as provided in circumstances that have occurred, by St. 1946, c. 518, § 3.[1]  The New York, New Haven and Hartford Railroad Company, hereinafter called the New Haven, has been allowed to intervene as a party respondent. The single justice, after hearing evidence and making findings of fact and rulings of law, reserved and reported the entire case for the consideration of the full court.

In 1907 the New Haven acquired one hundred nine thousand nine hundred forty-eight shares of the common stock of the Boston and Maine Railroad, hereinafter called the Boston and Maine.  This acquisition was contrary to the policy of this Commonwealth as declared by St. 1874, c. 372, § 53, which at the time of the acquisition was embodied in St. 1906, c. 463, Part II, § 57.  After the decision in *Attorney General* v. *New York, New Haven & Hartford Railroad*, 198 Mass. 413, whereby the New Haven was enjoined from holding certain other stocks acquired by it, the Boston and Maine stock above mentioned was transferred to a resident of Connecticut who "retained" it in that State.  Thereafter the Legislature of this Commonwealth enacted St. 1909, c. 519, incorporating the holding

---

[1] The statute requires that the Commonwealth be made a party.

company for the sole purpose of holding the securities, including stock, of the Boston and Maine. Section 1 of this act made applicable to the new corporation certain provisions of general laws, the material portions of which are dealt with later in this opinion. Section 3 provided that the stock of the Boston and Maine acquired by the holding company should not be sold by it without express authority from the Legislature. Section 4 provided that any railroad then incorporated under the laws of this Commonwealth, as the New Haven was, might acquire stock of the holding company, which it might sell upon guaranteeing it, but not without express authority of the Legislature; that the Commonwealth might by act of the Legislature take or acquire such stock by purchase or otherwise, provided that such taking or purchase should include all the securities of the holding company; and that the acquisition by any railroad of the stock of the holding company should be deemed an acceptance by the railroad of all the terms and provisions of the act.

By St. 1910, c. 639, the holding company was given authority to issue preferred stock without voting power (§ 1). It was also provided that the preferred stock should constitute a charge and lien upon, and be secured by, all stock of the Boston and Maine held by the holding company (§ 2), and that, subject to the right of the Commonwealth reserved by the act of 1909 to purchase or acquire the preferred stock of the holding company, this court might enforce the lien by sale of the Boston and Maine stock (§ 4).

The New Haven brought in to the holding company the one hundred nine thousand nine hundred forty-eight shares of Boston and Maine stock which it had acquired in 1907, and received in exchange for those shares and additional shares acquired later (representing a total original investment by the New Haven of slightly over $30,000,000, but subsequently greatly depreciated in value) all the common stock of the holding company. This gave to the New Haven complete voting control in the holding company. The New Haven also acquired the preferred stock of the holding company, of which it still holds two hundred forty-seven

thousand seven hundred fifty-nine shares out of a total of two hundred seventy-one thousand nine hundred nine shares. The remaining twenty-four thousand one hundred fifty shares of preferred, called the publicly held preferred stock, were guaranteed as to dividends by the New Haven and were sold by it to the public. This is the stock which the petitioners now hold in part. Through its control of the holding company and the latter's ownership of stock in the Boston and Maine, the New Haven has control of twenty-six and two tenths per cent of the voting power in the Boston and Maine. For further history of the relations between the holding company and the New Haven see *Codman* v. *New York, New Haven & Hartford Railroad,* 253 Mass. 144.

Statute 1946, c. 518, under which this proceeding is instituted, dissolves the holding company, subject to the provisions of G. L. (Ter. Ed.) c. 155, § 51, which continues the corporation for three years as a body corporate for the purpose of prosecuting and defending suits and of enabling it gradually to settle and close its affairs, dispose of its property and divide its stock. The 1946 act also provides that the powers of the receiver appointed by this court to wind up the affairs of the corporation and the existence of the corporation may be continued only so long as the court finds necessary for those purposes; that nothing in the act [1] shall affect the lien or priority of the preferred stock; but that no distribution or sale of the company's Boston and Maine stock shall be made unless the department of public utilities shall have furnished to the court satisfactory evidence showing that no distributee or purchaser (other than the Boston and Maine itself) shall hold stock carrying more than five per cent of the total voting power in the Boston and Maine; and that no sale or distribution shall be made before May 1, 1948, except pursuant to a plan of liquidation approved by a majority of each class of stock in the holding company and by the court as fair and equitable.

The provisions of the pertinent statutes will be discussed with greater particularity, and further findings of the single

---

[1] § 4.

justice will be referred to in the course of the consideration
of the issues presented.    These issues are raised by the re-
spondents the holding company and the New Haven, both
of which contend that the 1946 act, under which this pro-
ceeding is brought, is wholly unconstitutional and gives the
court no jurisdiction whatever to entertain the petition.
They set up three grounds for this contention.

(1)  They assert that the statutes of 1909 and 1910 created
a contract or contracts between the Commonwealth on the
one hand and the holding company and the New Haven or
each of them on the other hand on the principle of *Trustees
of Dartmouth College* v. *Woodward,* 4 Wheat. 518, and that
the 1946 act impaired the obligation of this contract or these
contracts contrary to the Constitution of the Commonwealth
(see *Wales* v. *Stetson,* 2 Mass. 143, 146; *Opinion of the Jus-
tices,* 9 Cush. 604, 610) and to art. 1, § 10, of the Constitu-
tion of the United States (a) in that the provision of general
laws allowing a period of three years for winding up the
affairs of a dissolved corporation was, as these respondents
say, included by reference in the 1909 act, and that, not-
withstanding a similar reference in the 1946 act, this period
was shortened by the provision of the 1946 act that "The
powers of . . . [the] receiver and the existence of . . .
[the] corporation may be continued only so long as the court
finds necessary for said purposes"; (b) in that the provi-
sion of the 1946 act that no sale or distribution of the hold-
ing company's stock in the Boston and Maine should be
made before May 1, 1948, except pursuant to a plan of
liquidation approved by a majority of each class of stock, is
contrary to the provisions regulating liquidation in general
laws incorporated by reference in the 1909 act; and espe-
cially (c) in that the proviso of the 1946 act to the effect that
no distribution or sale of the holding company's Boston and
Maine stock should be made whereby any distributee or
purchaser (except the Boston and Maine itself) should hold
stock carrying more than five per cent of the total voting
power in the Boston and Maine is a clog upon liquidation
not found in and inconsistent with general laws made appli-
cable by the 1909 act.

(2) These respondents further contend that the 1946 act deprives them of property without due process of law, and

(3) That it denies to the New Haven equal protection of the laws.

Although the considerations applicable to these three contentions are not wholly unrelated, it will nevertheless be convenient to consider the contentions separately.

1. The acts of 1909 and 1910 did not, separately or together, create a contract between the Commonwealth and the holding company or the New Haven or both of them which would prevent the alteration of their relations in the manner brought about by the 1946 act. Ample safeguards were provided to prevent such a result. One of the sections of general laws subject to which the holding company was incorporated according to § 1 of the 1909 act was § 2 of c. 437 of the acts of 1903, known as the business corporation law. (See now G. L. [Ter. Ed.] c. 155, § 3.) Said § 2 contained this provision: "The charters of all corporations which are subject to the provisions of this act and which have been incorporated by special law since the eleventh day of March in the year eighteen hundred and thirty-one and all of such corporations as may be hereafter incorporated by special law shall be subject to amendment, alteration or repeal by the general court." The holding company was thereafter incorporated by special law. The provision just quoted was applicable to the holding company and was substantially the same provision of which the Supreme Court of the United States said through Mr. Justice Miller in *Greenwood* v. *Freight Co.* 105 U. S. 13, at page 17, "It would be difficult to supply language more comprehensive or expressive than this." He added that the Legislature need give no reason for its action, and that "The validity of such action does not depend on the necessity for it, or on the soundness of the reasons which prompted it" (105 U. S. at page 17). It is true that at the time of that decision the statute (then Gen. Sts. c. 68, § 41) used the words "at the pleasure of the legislature" at the close of the quotation instead of the more simple expression "by the general court" found in St. 1903, c. 437, § 2, and that

Mr. Justice Miller commented upon the former wording; but we are confident that this change of words in the course of revision was not intended to change the force and effect of the provision.

As supporting the proposition that there is from the purely contractual standpoint no impairment of a contract in the face of such a provision, we also cite the following: *Hamilton Gas Light & Coke Co.* v. *Hamilton*, 146 U. S. 258, 269–271, *Citizens' Savings Bank* v. *Owensboro*, 173 U. S. 636, 644, *Calder* v. *Michigan*, 218 U. S. 591, *Sears* v. *Akron*, 246 U. S. 242, 249, *Coombes* v. *Getz*, 285 U. S. 434, 441, *Public Service Commission of Puerto Rico* v. *Havemeyer*, 296 U. S. 506, 517, *Phillips Petroleum Co.* v. *Jenkins*, 297 U. S. 629, 634–635, *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 451, *Thornton* v. *Marginal Freight Railway*, 123 Mass. 32. And see in general *Newton* v. *Commissioners*, 100 U. S. 548, 561.

The respondents the holding company and the New Haven have argued that §§ 52 and 53 of St. 1903, c. 437, relating to the method of liquidation, although not specifically mentioned in the 1909 act, were also incorporated into that act by the reference therein to St. 1903, c. 437, § 2, in the first sentence of which §§ 52 and 53 are mentioned. But that first sentence refers only to "Corporations organized under general laws," and the holding company was incorporated by special law. This distinction between corporations organized under general laws and corporations incorporated by special law runs all through § 2 of the act of 1903 as well as through the preceding § 1. It seems plain that the provisions of § 2 which were intended to be made applicable to the holding company by § 1 of the 1909 act were only those provisions that had reference to the type of corporation to which the holding company belonged, [1] and that there was nothing in the 1909 act to

---

[1] Liquidation provisions similar to those found in St. 1903, c. 437, §§ 52, 53, formerly applied both to corporations organized under general laws and to those incorporated by special law. R. L. c. 109, § 3. But this section was repealed as to business corporations by St. 1903, c. 437, § 95, and § 2 of that act was substituted. General application of the liquidation provisions to corporations incorporated by special law was not restored until the enactment of G. L. c. 155, § 3, too late to affect any question of contract in this case.

qualify the broad effect of the words hereinbefore quoted as reserving to the Legislature absolute powers of amendment, alteration, and repeal in so far as relates to any question of contract between the Commonwealth and the holding company and a fortiori between the Commonwealth and the New Haven. It should be added that the provision for "perpetual succession" in St. 1903, c. 437, § 4 (a), and the provision that corporations subject to that act should be dissolved or have their affairs wound up "in the manner hereinafter provided" in § 4 (i), on both of which the respondents the holding company and the New Haven in part rely, were likewise subject to "amendment, alteration or repeal" under § 2.

There was nothing in the act of 1910 that created any permanently binding contract. That act was an amendment of the 1909 act and was itself subject to the powers of amendment and repeal contained in St. 1903, c. 437, § 2. *Roxbury* v. *Boston & Providence Railroad*, 6 Cush. 424, 431–432. *Granara* v. *Italian Catholic Cemetery Association*, 218 Mass. 387, 391. *Miller* v. *State*, 15 Wall. 478, 492–495. *Holyoke Co.* v. *Lyman*, 15 Wall. 500, 522. *Phillips Petroleum Co.* v. *Jenkins*, 297 U. S. 629, 634.

We have given no consideration to art. 59 of the Amendments to the Constitution of Massachusetts, since that article was not adopted until after 1910. *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, 549. And in dealing with the alleged impairment of contractual obligations we have not found it necessary to consider whether the act of 1946 could not in any event stand as a valid exercise of the so called police power. See *Opinion of the Justices*, 293 Mass. 589, 600–601; *Home Building & Loan Association* v. *Blaisdell*, 290 U. S. 398, 434–437; *Veix* v. *Sixth Ward Building & Loan Association of Newark*, 310 U. S. 32, 38–39. The police power is discussed later in this opinion in connection with the second contention of the respondents the holding company and the New Haven.

2. In our opinion St. 1946, c. 518, does not deprive the holding company or the New Haven of property without due process of law.

It is plain from what has already been said that the Legislature had the power to dissolve the holding company and to provide for its liquidation in a reasonable manner. No contention is made that, apart from alleged unconstitutional violation of contract, such dissolution and liquidation would in themselves constitute a deprivation of property. No contention is made that, apart from contract, the Legislature was under any obligation to provide for continuance, after dissolution of the holding company, of the twenty-six and two tenths per cent control of voting power in the Boston and Maine which the New Haven had enjoyed while the holding company existed, subject to the provisions of the holding company's charter designed to protect the public against misuse of this power. On the branch of the case with which we are now dealing the contention of the respondents the holding company and the New Haven is in substance that the manner of liquidation is not fair to them and will result in loss of value because of the proviso designed to prevent any purchaser or distributee from holding stock carrying more than five per cent of the voting power of the Boston and Maine. It is argued that this proviso will militate against securing the best price for the Boston and Maine stock. There seem to us to be two answers to this contention.

One answer is that on oral evidence which was more or less conflicting and subject to differing inferences the single justice made a finding of fact that he was "not satisfied" that the five per cent proviso would "result in the receiver obtaining less than the fair market value of these stocks." We cannot say that this finding is plainly wrong, and it must stand, even if we assume that this court has the same power to review findings of fact in this statutory proceeding that it would have in an ordinary suit in equity. See *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. Because of this finding it does not appear that either of the objecting respondents has been deprived of any property by the 1946 act.

But we think there is another answer. All property is held subject to the power and duty of the Legislature,

from time to time, to make, ordain, and establish all manner of wholesome and reasonable laws, not contrary to the Constitution, as they shall judge to be for the good and welfare of the Commonwealth. Constitution of Massachusetts, c. 1, § 1, art. 4. This power, which resides in every sovereign state, has, unfortunately we think, come to be called the police power. It is manifest that the necessary and proper exercise of this power will frequently limit and restrict the freedom of action which particular persons and corporations would otherwise enjoy in the management and control of their property, and that such limitation and restriction do not constitute a taking of property for which compensation must be allowed. Not infrequently it becomes a question of great difficulty whether a regulation of property rights is a permissible exercise of general legislative power or is a deprivation of property without compensation. See *Pennsylvania Coal Co. v. Mahon*, 260 U. S. 393. The so called police power is discussed at length in the recent case of *Boston Elevated Railway v. Commonwealth*, 310 Mass. 528. Extended discussion here would serve no purpose. Reference may be had to such cases as *Commonwealth v. Alger*, 7 Cush. 53, *Newton v. Joyce*, 166 Mass. 83, *Chase v. Proprietors of Revere House*, 232 Mass. 88, 98, *Lowell Co-operative Bank v. Co-operative Central Bank*, 287 Mass. 338, *Howes Brothers Co. v. Unemployment Compensation Commission*, 296 Mass. 275, 282–285, *Euclid v. Ambler Realty Co.* 272 U. S. 365, and *Nebbia v. New York*, 291 U. S. 502.

The holding company held its stock in the Boston and Maine and the New Haven held its stock in the holding company subject to this power. It is trite, but still useful, to repeat that "Every rational presumption will be indulged in favor of the validity of an act of the legislative department of government and the court will not refuse enforcement unless its conflict with the Constitution is established beyond reasonable doubt." *Commonwealth v. S. S. Kresge Co.* 267 Mass. 145, 148. There are three principal lines of railroad operating in this Commonwealth. All three are vital links between the industrial and populous eastern

portion of the State and the continental interior of the country. It is fair to infer that these lines are actual competitors. Certainly they are potential competitors to a high degree. The public has a very large stake in the matter of control of these means of transportation. We cannot say that the Legislature could not reasonably conclude that the welfare of the Commonwealth requires that there be a wide distribution of the stock of one of these three main lines, so that unrestricted control will not again readily fall into the hands of another of them or of some other interest seeking control for purposes antagonistic to the interests of the Commonwealth, as soon as the protection afforded the Commonwealth by the holding company has disappeared. See *Attorney General* v. *New York, New Haven & Hartford Railroad,* 198 Mass. 413, 425–426. The five per cent clause seems a rational provision adapted to secure the public welfare in this regard, even though it does not amount to an absolute guaranty that some single interest may not again secure control.

This clause is not as restrictive as it might at first sight seem to be. It will permit the sale of Boston and Maine stock in blocks as large as fifty-two thousand three hundred six shares. This will allow the sale in one block of all the prior preference stock and the sale in one block of each of the lettered issues of preferred stock or of all the lettered issues taken together. The expert who testified on the subject gave his opinion, in substance, that the way to sell these stocks would be in blocks by themselves. Even the common stock can be sold, if desired, in no more than five blocks. The expert testified at one point that this was the obvious way to sell it — to reduce it to units "that would be negotiable." The financial position in recent years of both the Boston and Maine and the New Haven as disclosed in the record and as matter of common knowledge has a tendency to throw serious doubt upon the money value of control. Under the provisions of the 1946 act there will be no forced sale. Sales will be made subject to the control and approval of this court as to price. The lien of the preferred stock of the holding company upon the stock of

the Boston and Maine created by the 1910 act is preserved. St. 1946, c. 518, § 4. The worst that can be said of the five per cent proviso is that conceivably it might have some adverse effect upon prices. On the other hand there is some evidence tending to show that it might even have an advantageous effect upon prices, and that it would be unwise to try to sell in larger blocks than those permitted. It is also to be remembered that as matters stood under the 1909 act before the passage of the 1946 act these stocks could not be sold at all "without express authority from the legislature." St. 1909, c. 519, § 3.

In view of the high public interest involved in the disposition of these railroad stocks and of the relatively slight impediment to their sale involved in the five per cent proviso, even if it might possibly cause some loss, we incline to the opinion that the restriction contained in the 1946 act does not reach beyond permissible regulation under the general powers of the Legislature and is not a taking of property without compensation or without due process of law. In the circumstances it seems to us immaterial that the legislation takes the form of a special act applicable to a particular situation, of which only one instance exists, instead of being formulated, as doubtless it might have been, in the shape of a general law. As was said in *Brown* v. *Boston & Maine Railroad,* 233 Mass. 502, at page 511, "For many years all legislation respecting railroads was by special act. Because certain general laws have been passed is no reason why in appropriate instances special acts may not still be enacted."

We are aided in reaching the conclusion that the five per cent provision is within the police power by the recent decisions of the Supreme Court of the United States in *North American Co.* v. *Securities & Exchange Commission,* 327 U. S. 686, 707–710, and *American Power & Light Co.* v. *Securities & Exchange Commission,* 329 U. S. 90, 106, et seq. Under the authority of these decisions it would seem that the legislative power may, in the interest of the public welfare, authorize the compulsory divestment of vast assets of holding companies, involving the element of control, at

least where actual material destruction of value is not shown by plenary proof.

3. The contention of the respondents the holding company and the New Haven that St. 1946, c. 518, denies to the New Haven the equal protection of the laws rests upon the facts that the Pennroad Corporation, not shown to have been incorporated in this Commonwealth, held approximately nineteen per cent of the voting power in the Boston and Maine as against the twenty-six and two tenths per cent held by the holding company, and that Pennroad was not affected in its rights in its holdings by the five per cent provision. But the subject matter of the 1946 act was the dissolution and liquidation of the holding company, a Massachusetts corporation, under a reserved power. We do not see that either Constitution required the Legislature so to exercise such a reserved power as to affect in the same way all owners, domestic or foreign, of Boston and Maine stock, including such owners as were in no way involved in the liquidation of the holding company. We do not reach the question whether in any event the Legislature might distinguish between nineteen per cent and twenty-six and two tenths per cent.

4. Two questions of evidence are reported. We see no error in excluding either the letter of a vice-president of the New Haven to its president dated April 15, 1909, or the message of the Governor to the Legislature of April 20 in that year. The statutes speak for themselves as to their construction and effect. The excluded exhibits, even if otherwise competent, which we do not imply, contain nothing of assistance upon any doubtful question of interpretation. Our conclusions and the outcome of the case would have been precisely the same if they had been admitted.

The result of this opinion is that a receiver is to be appointed for the Boston Railroad Holding Company in accordance with § 3 of St. 1946, c. 518, and further proceedings are to be had in accordance with that statute. A decree is to be entered to that effect.

*So ordered.*