392 Mass. 788 (1984)
467 N.E.2d 1318
CITY OF BOSTON & others[1]
vs.
BOARD OF EDUCATION & others.[2]
Supreme Judicial Court of Massachusetts, Suffolk.
May 7, 1984.
August 15, 1984.
Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.
Stephen S. Ostrach, Assistant Attorney General, for Board of Education.
Cathleen Cavell for the town of Brookline.
Michael J. Betcher (H. Charles Hambelton, Special Assistant Corporation Counsel, with him) for the plaintiffs.
Charles J. Beard, Stephen B. Deutsch, & Martha B. Sosman, for Metropolitan Council for Educational Opportunity, Inc., amicus curiae, submitted a brief.
*789 HENNESSEY, C.J.
This appeal concerns the city of Boston's liability for the cost of special education services provided to a city of Boston resident, Melissa M., attending school in Brookline under the provisions of G.L.c. 76, § 12A, more commonly known as the METCO program. It arises from a determination by the Department of Education, Bureau of Special Education Appeals (bureau), that Melissa M.'s 1978-1979 "individual education plan" (IEP) was "inadequate and inappropriate in so far as it provides for funding of Melissa's tutoring through METCO ... and of her speech and language therapy through Brookline special education monies rather than through a bill-back to Boston." Boston commenced an action against the Board of Education (board) and the town of Brookline (Brookline) challenging this decision. It sought review of the decision pursuant to G.L.c. 30A and a declaration, pursuant to G.L.c. 231A, that the Commonwealth is obliged under G.L.c. 76, § 12A, to pay for the special education costs of students in the METCO program. A judge of the Superior Court reviewed the decision under G.L.c. 30A and concluded that the bureau's decision contained an error of law. He reversed and modified the decision, ruling that Brookline be reimbursed by the Commonwealth, pursuant to G.L.c. 76, § 12A, for the costs of special education services provided to Melissa M. The board and Brookline appealed and Boston cross appealed from the judge's allowance of a motion in limine brought by Brookline. We allowed the board's application for direct appellate review.[3] We conclude that responsibility for paying the cost of special education services provided to Melissa M. under the METCO program rests with Boston.
Neither party challenges the factual findings of the bureau and they may be summarized as follows. In 1979 Melissa M. was a ten year old fourth grader residing in Boston and attending the Brookline school system under the METCO program.[4] *790 Melissa had long-standing speech and language problems and was receiving tutorial assistance as a special needs student. Brookline charged the METCO program from the cost of these services. In 1978 Melissa's special needs assistance was terminated for six weeks due to METCO budgetary constraints. Melissa's 1978-1979 IEP also called for individualized special needs tutoring that was to be provided by METCO. Melissa's parents, not wanting Melissa's education to be further interrupted as it was in 1978, rejected Melissa's IEP because it was funded by METCO. They petitioned the bureau for a hearing under 603 Code Mass. Regs. §§ 28-400 to challenge the propriety of Melissa's IEP and the method of funding her educational program.
1. The Defendants' Appeal.
At issue in considering whether Boston or the METCO program should pay for the costs of special education services provided to Melissa M. under the METCO program is the interrelation of two statutes: G.L.c. 71B, §§ 3, 5, and G.L.c. 76, § 12A. First, G.L.c. 71B, inserted by St. 1972, c. 766, establishes a comprehensive system for the provision of special education services to residents of the Commonwealth. Section 3 of G.L.c. 71B, as amended by St. 1978, c. 552, § 20, provides in part that "the school committee of every city, town or school district shall identify the school age children residing therein who have special needs, diagnose and evaluate the needs of such children, propose a special education program to meet those needs, [and] provide or arrange for the provision of such special education program...." Section 5 of G.L.c. 71B then provided[5] that "[a]ny school committee which provides *791 or arranges for the provision of special education pursuant to the provisions of section three shall pay for such special education personnel, materials and equipment." Second, G.L.c. 76, § 12A, establishes a program by which a Boston resident may attend school outside of Boston, pursuant to agreements between the municipalities of attendance and the board of education. General Laws c. 76, § 12A, as appearing in St. 1974, c. 636, § 7, provides in relevant part as follows: "Any child residing in any... town, and attending therein a public school in which such racial imbalance exists may attend a public school or a publicly authorized non-sectarian school in a ... town, ... in which he does not reside if the school committee of such ... town ... has adopted and the board has approved, as provided by this section, a plan for the attendance of such nonresident children therein. The commonwealth shall, subject to appropriation and upon certification by the board, provide financial assistance in accordance with such agreement. Such financial assistance shall include payments for: (i) the cost per pupil of educating each non-resident child, as approved by the board."
The defendants claim that G.L.c. 71B, §§ 3, 5, controls the allocation of responsibility for paying the costs of special education services provided to Melissa M. through the METCO program. They point out that Melissa M. is a school age child residing in Boston who is in need of special education services. They then stress that G.L.c. 71B, §§ 3, 5, place sole responsibility for "provid[ing] or arrang[ing]" and paying for a student's special education services on the town of the student's *792 residence. Accordingly, they argue that Boston is responsible for the cost of such services provided to a Boston resident, regardless of whether the child is participating in the METCO program. Nothing in either G.L.c. 71B or G.L.c. 76, § 12A, they claim, relieves Boston of this responsibility. Alternatively, Boston asserts that G.L.c. 76, § 12A, relieves it of the responsibility to pay for special education services provided to one of its residents where the resident is participating in the METCO program and the services are not provided by Boston. It focuses on the language of G.L.c. 76, § 12A, which requires the State to pay to participating communities the "cost per pupil of educating" students enrolled in the METCO program. It claims that, since Melissa M. is entitled to special education services G.L.c. 71B, § 3, and since the statute does not indicate otherwise, the "cost per pupil of educating" must be intended to include the cost of special education services, as well as regular educational expenses.
To determine which reading of the statutes is correct, we follow "`"[t]he general and familiar rule ... that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."'" Commonwealth v. Collett, 387 Mass. 424, 432 (1982), quoting Industrial Fin. Corp. v. State Tax Comm'n, 367 Mass. 360, 364 (1975). See Oxford v. Oxford Water Co., 391 Mass. 581, 587 (1984). In doing so, we also bear in mind the principles applicable in construing the interrelation of different statutes. Where two statutes are alleged to be inconsistent, they are construed in a manner which gives reasonable effect to both statutes and creates a consistent body of law. Goldsmith v. Reliance Ins. Co., 353 Mass. 99, 102 (1967). We will find an implied repeal of one statute by another only when "the prior statute is so repugnant to, and inconsistent with, the later enactment that both cannot stand." Commonwealth v. Graham, 388 Mass. 115, 125 (1983). See Doherty v. Commissioner of Admin., 349 Mass. 687, 690 (1965).
*793 Applying these principles to the statutes before us, we conclude that G.L.c. 71B, §§ 3, 5, place responsibility on Boston to pay for special education services provided to Boston residents participating in the METCO program and that this responsibility is unaltered by the provisions of G.L.c. 76, § 12A.[6] To find otherwise, we would have to conclude that the Legislature intended in G.L.c. 76, § 12A, to repeal some of the clear financial burden placed on Boston under G.L.c. 71B, §§ 3, 5. This we are unwilling to do.
General Laws c. 71B, §§ 3, 5, plainly state that Boston is responsible for providing or arranging and paying for the special education services of its residents. The parties do not dispute that Melissa M. is a resident of Boston who qualifies for special education services under G.L.c. 71B, § 3. Accordingly, unless G.L.c. 76, § 12A, contains plain language or a "clear implication" that the Legislature intended it to repeal the specific obligations established by G.L.c. 71B, § 3, Boston must pay for the services. Boston has not demonstrated that the Legislature intended explicitly or impliedly to repeal part of the obligations imposed on Boston in G.L.c. 71B by enacting G.L.c. 76, § 12A. "Where the repealing effect of a statute is doubtful, the statute is strictly construed to effectuate its consistent operation with previous legislation" (emphasis in original). Commonwealth v. Hayes, 372 Mass. 505, 512 (1977), quoting 1A C. Sands, Sutherland Statutory Construction § 23.10 (4th ed. 1972). General Laws c. 71B, inserted by St. 1972, c. 766, was enacted prior to the language regarding funding of the METCO program contained G.L.c. 76, § 12A, as appearing in St. 1974, c. 636, § 7, which we now construe. Accordingly, the most consistent reading of the latter statute in light of the prior statute is to conclude that G.L.c. 76, *794 § 12A, does not alter the obligations imposed by G.L.c. 71B, §§ 3, 5.
Boston challenges this result. It claims first that the funding provisions of the METCO program, originally established by St. 1966, c. 506, were enacted before the obligations placed on Boston by St. 1972, c. 766, G.L.c. 71B, and, therefore are the prior statute. It next stresses that when the original METCO legislation was enacted a town had a responsibility to provide its residents with special education services, under statutes since repealed, albeit the responsibility was different from that created by St. 1972, c. 766. Having made this observation, Boston asserts that paying the cost of providing these non-St. 1972, c. 766, special education services provided to METCO students was included within the term "cost per pupil of educating" under the original METCO statute. Finally, Boston contends that the general statutory scheme of public school financing supports a conclusion that the Commonwealth, not Boston, must pay the cost of special education services provided to Boston residents receiving special education services as part of the METCO program.
We are not persuaded by these arguments. First, the statute concerning the Commonwealth's obligation to fund "the cost per pupil of educating" students in the METCO program, St. 1974, c. 636, § 7, was enacted after St. 1972, c. 766, and previously enacted and repealed versions of G.L.c. 76, § 12A, are not controlling now. Second, whatever may have been the status of special education prior to 1972, the enactment of St. 1972, c. 766, substantially changed it. Any relation these prior statutes may have had to the prior version of G.L.c. 76, § 12A, is of little relevance here. Finally, nothing in either G.L.c. 71B or G.L.c. 76, § 12A, indicates a legislative intent that they be construed in accordance with the financial obligations established for the cost of regular education services. Since we can reasonably and consistently construe the statutes now before us without reference to this more general statutory design, we do so. And, in any event, we find nothing in our current construction of G.L.c. 71B, §§ 3, 5, and G.L.c. 76, § 12A, that is inconsistent with that design.
*795 Supporting our conclusion that Boston's obligations under G.L.c. 71B are not relieved in part by the language in G.L.c. 76, § 12A, imposing financial responsibility on the Commonwealth for the METCO program, is the general purpose of each statute. Both encourage equality of educational opportunity. General Laws c. 71B was enacted "to provide for a flexible and uniform system of special education program opportunities for all children requiring special education ... and to prevent denials of equal educational opportunity ... in the provision of differential education services." Commonwealth v. School Comm. of Springfield, 382 Mass. 665, 676 (1981), quoting St. 1972, c. 766, § 1. General Laws c. 76, § 12A, fosters equality of educational opportunity by helping eliminate racial imbalance in a school system.
The purposes of both of those statutes is furthered by construing them to place on Boston the responsibility for paying the cost of special education services provided to a Boston resident participating in the METCO program. First, city of Boston residents in need of special education services will be certain to receive them whether they are enrolled in the Boston school system or another school system allowed under the METCO program. Unlike the factual situation giving rise to this case, a Boston resident's special education services will not be interrupted because of limited appropriations made by the Legislature to the METCO program. Rather, all Boston residents requiring special education services will be funded from the same source and will be treated similarly. Second, with Boston paying for the cost of special education services, there will be no financial incentive for the board or communities participating in the METCO program to exclude special needs students from participating in the program. Such students will therefore be more readily able to gain admission to the METCO program on an equal footing with students requiring only regular educational services. Finally, our construction of the statutes will allow the maximum number of students to participate in the METCO program. While intending to help eliminate racially imbalanced school systems by enacting G.L.c. 76, § 12A, the Legislature also expressed an intent that the METCO *796 program be contained within certain fiscal boundaries. For example, the statute states that costs paid by the Commonwealth to the program shall be "subject to appropriation," and since 1978 the Legislature has provided, in part, in appropriations for the program, that such payments "shall in no case exceed the average per-pupil instructional costs ... for appropriate grade levels as incurred by the school district during the current school year."[7] Accordingly, keeping the average pupil costs incurred by the METCO community providing services low by requiring Boston to pay for such services, would, consistent with the appropriation limits on the METCO program's size, allow more students to participate in the program.
2. Cross Appeal.
In its cross appeal Boston challenges the trial court's allowance of the defendant's motion in limine. Boston sought to introduce in evidence at trial information in addition to that contained in the administrative record before the bureau in its consideration of the challenge to Melissa's IEP. Brookline filed a motion in limine arguing that the issue before the trial judge was purely a matter of law regarding the proper construction of two statutes. Boston asserted that the information was admissible. It stressed that it had filed an action for declaratory relief under G.L.c. 231A, as well as under G.L.c. 30A, and that, therefore, "Boston should be afforded the opportunity to present whatever evidence the Court finds relevant and helpful in the resolution of the issues presented." The judge allowed the defendant's motion.
"The purpose of a motion in limine is to prevent irrelevant, inadmissible or prejudicial matters from being admitted in evidence ... and in granting such a motion, a judge has discretion similar to that which he has when deciding whether to admit or exclude evidence ..." (citations omitted). Commonwealth v. Hood, 389 Mass. 581, 594 (1983), quoting Commonwealth v. Lopez, 383 Mass. 497, 500 n. 2 (1981). We believe that, in *797 the circumstances of this case, the judge did not err in allowing the defendant's motion in limine.[8]
Boston's extensive offer of proof demonstrates that it sought to introduce in evidence information concerning the operation of the METCO program and the provision of special education services by Boston to its residents. While Boston admits in its brief to this court that its claim against the defendants involved solely a matter of law, it argues that the evidence it sought to introduce consisted of "legislative facts" relevant to a determination of the Legislature's intent in enacting G.L.c. 71B, §§ 3, 5, and G.L.c. 76, § 12A. See, e.g., 1 K.C. Davis, Administrative Law §§ 7.02, 7.06 (1958).
We have suggested that in some contexts consideration of extrinsic information regarding a statute's operation may be useful in construing a statute, O'Brien v. State Tax Comm'n, 339 Mass. 56, 70 (1959), or determining its constitutionality, Commonwealth v. Henry's Drywall Co., 366 Mass. 539, 541 n. 4 (1974). See generally Charles, Extrinsic Evidence and Statutory Interpretation: Judicial Discretion in Context, 7 Dalhousie L.J. 7 (1983); Comment, The Use of Extrinsic Aids in Determining Legislative Intent in California: The Need for Standardized Criteria, 12 Pac. L.J. 189 (1980). We are, however, reluctant to consider extrinsic evidence of legislative intent other than formal legislative history, particularly where, as in the instant case, it bears on the Legislature's determination of financial costs and benefits of legislation. See Opinion of the Justices, 368 Mass. 824, 826 (1975); cf. McKenney v. Commission on Judicial Conduct, 377 Mass. 790, 799 (1979). We are not persuaded that the information Boston sought to introduce is a relevant aid to determining legislative intent in the circumstances of this case. Our conclusion that G.L.c. 76, § 12A, does not relieve Boston from its financial obligations under G.L.c. 71B, §§ 3, 5, neither leads to an absurd result nor *798 is inconsistent with the general purpose of either statute. Cf. Oxford v. Oxford Water Co., 391 Mass. 581, 588-592 (1984); Murphy v. Bohn, 377 Mass. 544, 547 (1979); Commonwealth v. Welosky, 276 Mass. 398, 401-402, cert. denied, 284 U.S. 684 (1932). In any event, Boston has suffered no prejudice from the judge's allowance of the defendant's motion in limine. "The statutes speak for themselves as to their construction and effect. The excluded exhibits ... contain nothing of assistance upon any doubtful question of interpretation. Our conclusions and the outcome of [this] case would have been precisely the same if they had been admitted." Delaware & Hudson Co. v. Boston R.R. Holding Co., 323 Mass. 282, 294 (1948).
The judgment is reversed and a judgment is to be entered declaring that responsibility for paying the cost of special education services provided to Melissa M. rests with Boston. The cross appeal by Boston is dismissed.
So ordered.
NOTES
[1] The members of the school committee of the city of Boston.
[2] town of Brookline and Melissa M.
[3] We appreciate the helpful analysis in the amicus curiae brief submitted by the Metropolitan Council for Educational Opportunity, Inc.
[4] The METCO program is a voluntary program designed to alleviate racial imbalance in Massachusetts schools. Children living in racially imbalanced areas are allowed, subject to the provisions of G.L.c. 76, § 12A, to attend schools in other cities and towns.
[5] We note that the Legislature has modified the language of G.L.c. 71B, § 5, in St. 1981, c. 351, § 123, and St. 1982, c. 314. These modifications of the statute are not applicable to the current appeal as they did not take effect until July 1, 1981, and October 11, 1982, respectively. The bureau's decision at issue here concerns the propriety of Melissa M's IEP for the 1978-1979 school year. In any event, even if the modified language were applicable to this appeal, it would not alter our consideration of G.L.c. 71B, §§ 3, 5, and G.L.c. 76, § 12A, nor do the parties argue that it should. The modifications of the language focus on limiting the responsibility of school committees to pay for certain health care goods and services provided to special education students. General Laws c. 71B, § 5, as amended through St. 1982, c. 314, now provides in relevant part as follows: "Any school committee which provides or arranges for the provision of special education pursuant to the provisions of section three shall pay for such special education personnel, materials and equipment, tuition, room and board, transportation, rent and consultant services as are necessary for the provision of special education; provided, however, that the school committee shall not be obligated to pay for health care goods or services to the extent that these ... would be covered by a third party payor but for a school-aged child's eligibility for such goods and services under this chapter...."
[6] We do not address the constitutional issues raised by the trial judge as Boston did not argue them, nor could it have argued them, see Spence v. Boston Edison Co., 390 Mass. 604, 608 (1983), on appeal. See Mass. R.A.P. 16 (a) (4), as amended 367 Mass. 919 (1975). We also need not address Boston's arguments regarding the impropriety of relying on the bureau's statutory construction in the circumstances of this case as we construe the statutes in question based on their language and general purpose alone.
[7] See Item XXXX-XXXX in the following statutes: St. 1978, c. 367, § 2; St. 1979, c. 393, § 2; St. 1980, c. 329, § 2; St. 1981, c. 351, § 2; St. 1982, c. 191, § 2; St. 1983, c. 289, § 2.
[8] We have said that in most cases the better course is for the judge to deny motions in limine which seek exclusion of an area of potential evidence. See Commonwealth v. Burke, 390 Mass. 480, 481 n. 1 (1983); Commonwealth v. United Books, Inc., 389 Mass. 888, 898 n. 5 (1983); Commonwealth v. Hood, 389 Mass. 581, 595 n. 5 (1983).