333 Mass. 405                                                405

County of Dukes County *v.* New Bedford, Woods Hole, &c., Steamship Auth.

COUNTY OF DUKES COUNTY & others *vs.* NEW BEDFORD, WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY & others.

Bristol.   November 9, 1955. — January 3, 1956.

Present: QUA, C.J., SPALDING, WILLIAMS, & COUNIHAN, JJ.

*New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.   Administrative Matter.   Jurisdiction,* Justiciable question. *Motive.   Equity Pleading and Practice,* Appeal, Judicial discretion, Declaratory proceeding.

An appeal from the final decree in a suit in equity for declaratory relief opened in this court the question of discretion whether such relief should be granted. [407]

Furnishing of steamship service by the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority to the port of New Bedford during the slack season and the making by the authority of a collective bargaining agreement providing for continuity of work or pay for its labor force could not be pronounced arbitrary, capricious or without proper cause and constituted administrative action not to be disturbed by the courts, even if the members of the authority acted "knowingly" and "contrary to their own best judgment." [408–409]

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Bristol on April 22, 1955.

An interlocutory decree sustaining a demurrer to the bill was entered by *Ronan,* J., and a final decree dismissing the bill by *Wilkins,* J.

*Edward O. Proctor,* for the County of Dukes County.

*John P. Sylvia, Jr.,* for the town of Falmouth.

*Russell J. Coffin,* for the town of Nantucket, submitted a brief.

*Andrew P. Doyle,* City Solicitor, for the city of New Bedford.

*Robert M. Segal,* (*Arthur J. Flamm* with him,) for Sawyer and another.

*Robert G. Dodge & Harold S. Davis,* for New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, submitted a brief.

QUA, C.J.   This is a bill originally brought in this court by the county against the authority for a declaratory decree and other relief involving the legality of the conduct of the authority in respect to matters hereinafter described as the result of which the county contends that unreasonable and unnecessary expense will be assessed upon it under the provisions of the statutes creating the authority.   St. 1948, c. 544, as amended by St. 1949, c. 142.   Subsequently the city of New Bedford was allowed to intervene, took the position of a defendant, and demurred and answered, and the towns of Falmouth and Nantucket, which are also subject to assessments, were allowed to intervene and took sides with the county.   Shortly thereafter one Sawyer and one Manchester were allowed to intervene, apparently as representatives of a union of laborers employed by the authority, and ranged themselves on the side of the defendant.   The demurrer of the city was sustained by a single justice on June 14, 1955.   The answer of the interveners Sawyer and Manchester was filed on the following day. On June 29 a final decree was entered dismissing the bill as to all parties.   The plaintiff appeals from the interlocutory decree sustaining the demurrer of the city, and the plaintiff and the two towns appeal from the final decree dismissing the bill.   The individuals who intervened as defendants have not appealed.

Ordinarily a demurrer cannot properly be sustained to a bill for a declaratory decree on the ground that the court does not agree with the proposition for which the plaintiff contends.   Usually a declaratory decree should be made in any event.   *Burnes* v. *Metropolitan District Commission,* 325 Mass. 731, 733.   *Zaltman* v. *Daris,* 331 Mass. 458. *Morgan* v. *Banas,* 331 Mass. 694, 698.   But where the plaintiff has failed to state a case presenting a controversy proper for determination under the declaratory procedure there is no reason why a demurrer may not be sustained.   It may

well be doubted whether a proper case was here presented. But we do not think it necessary to decide the question whether as a technical matter the demurrer of the city was rightly sustained. The appeals from the final decree brought here the question of discretion whether a declaratory decree ought to be entered. *Merchants Mutual Casualty Co.* v. *Leone*, 298 Mass. 96, 99–100. *Hogan* v. *Hogan*, 320 Mass. 658, 662–663. *Carlton Hotel, Inc.* v. *Abrams*, 322 Mass. 201. G. L. (Ter. Ed.) c. 231A, § 3. For reasons now to be stated we are of opinion that a declaratory decree should not be entered and that the injunctive relief prayed for should not be granted.

The provisions of the statutes under which the authority is set up and the powers and duties of the authority sufficiently appear in the statutes themselves and in two previous decisions of this court and need not be repeated here. *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket Steamship Authority*, 329 Mass. 243. *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket Steamship Authority*, 330 Mass. 422.

The bill contains some irrelevant matter, but the grounds of complaint as to the acts or failures to act of the authority in respect to which the plaintiff desires declaratory and other relief may be stated to be these: (1) By St. 1948, c. 544, § 5 (c), the authority is required to fix such rates "as in the judgment of its members are best adapted to insure sufficient income to meet the cost of the service" as defined in the statute. Such income cannot be had by merely increasing the rates generally, since the increase would necessarily be so great as to defeat its purpose. Such income can be realized only by suspending the service to New Bedford altogether during the so called winter months when traffic is greatly reduced. Therefore we are asked to declare that it is the duty of the authority to suspend service altogether to New Bedford from the latter part of September until the latter part of April in each year. It is alleged that the authority has several times voted to suspend service to New Bedford during the winter months, but for various

reasons has rescinded or failed to carry out these votes and that it has "knowingly" failed to fix such rates as in its judgment would be best adapted to insure sufficient income to meet the cost of service.[1]  (2) The authority is operating under a collective bargaining agreement with its labor force whereby the employees on a "guaranteed" list are entitled to fifty-two weeks work per year without reduction in pay. It is alleged that this agreement in effect requires the continued employment of unnecessary help and would become particularly important in the event of discontinuance of service to New Bedford.[2]  It is alleged that the conduct of the authority in these two respects, "being contrary to their own best judgment," is arbitrary, capricious, without proper cause, and unlawful.

There are also prayers for injunctive relief in respect to the same matters.

All of the matters of which complaint is made are matters of business judgment, and as such they are committed to the decision of the authority and not to that of the courts. See *New Bedford v. New Bedford, Woods Hole, Martha's Vineyard & Nantucket Steamship Authority,* 330 Mass. 422. We held in that case that the authority could suspend service to New Bedford for a substantial period in the slack season, but could not abandon that port altogether.  Any attempt to enlarge now on what we there said, in order to accomplish anything, could only take the form of compelling such suspension of service for some period of time which we would be obliged to specify.  This would require the exercise from time to time of discretion as to economic factors with which we are not and cannot be made familiar.  A large element of prophecy would be involved.  Suspension of service may make its renewal difficult and might con-

---

[1] An affidavit presented to us in behalf of the city directed to the point that the case has become moot shows that the authority by a majority vote has again determined to suspend all service to New Bedford from November 14, 1955, until April 29, 1956.  So far as we know this vote is being carried out.

[2] Affidavits presented to us in behalf of the defendants on the question of mootness show that a new collective bargaining agreement has been entered into whereby employees laid off are to receive $5 a day only instead of their regular wages.

ceivably affect future income in the busy season. In view of the provisions of statute under which the authority is operating we do not think the matter of the amount of service that should be rendered to any of the ports is a justiciable matter. It may be impossible to operate according to the statutory requirements without incurring losses. The provisions of the statute for assessment of deficiencies upon the county and the towns indicate that the Legislature envisioned the possibility of losses in spite of competent management.

What we have already said applies in principle to the labor contract as well. Under our former decision, if service to New Bedford is suspended in the slack season it must be renewed again at no distant date. It may be difficult to secure competent hands to operate steam vessels if no arrangement is made to care for them in substantial periods of time during which they are not allowed to work. Decision as to what arrangements are reasonable and necessary involves comparison with the practice in other similar enterprises as well as other factors and is again a matter for executive and not for judicial determination. The matter of employment is expressly committed to the authority by St. 1948, c. 544, § 5 (f), (h).

We cannot say judicially that the conduct of the authority has been in its nature arbitrary, capricious, or without proper cause, as alleged. There may of course be room for differences of opinion as to the wisdom of the course adopted, but all that is alleged seems to us to fall within the area of business judgment. The allegations that the members of the authority have acted "knowingly" and "contrary to their own best judgment" are at most only allegations of bad faith. When the acts of a public board are within the scope of its authority and are not in themselves inherently unreasonable a court will seldom, if ever, inquire into the states of mind of members of the board. *Downey* v. *School Committee of Lowell*, 305 Mass. 329, 332. *Gibney* v. *Mayor of Fall River*, 306 Mass. 561, 566. *Bushway-Whiting Ice Cream Co.* v. *Mayor of Somerville*, 308 Mass. 148, 151–152. *Kelley* v. *School Committee of Watertown*, 330 Mass. 150, 154.

*Despatchers' Cafe Inc.* v. *Somerville Housing Authority,* 332 Mass. 259, 264. *Povey* v. *School Committee of Medford, ante,* 70, 72–73. See *Morgan* v. *Banas,* 331 Mass. 694, 698.

We have been invited to dismiss these appeals as moot in view of the facts stated in the affidavits to which reference has been made in the previous footnotes. However, the problems are recurrent, and the labor question is not fully solved by the change in the labor contract. We have thought it best to decide the case.

> *Appeal from interlocutory decree dismissed.*
> *Final decree affirmed.*