OPINION OF THE JUSTICES TO THE GOVERNOR AND COUNCIL.

*Statute,* Approval by Governor. *Constitutional Law,* Approval of bill by Governor, Opinions of the Justices, Referendum, Obligation of contracts. *New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.*

The Governor and Council had authority under Part II, c. 3, art. 2, of the Constitution to require the opinions of the Justices as to the validity of a statute which would affect certain duties of the Governor and Council. [767]

Under Part II, c. 1, § 1, art. 2, of the Constitution, an enacted bill approved by the signature of the Governor after prorogation of the General Court but within five days after it was laid before him became law. [770–771]

By reason of art. 48 of the Amendments to the Constitution, The Referendum, III, § 2, "Excluded Matters," St. 1956, c. 747, relating to the service to be furnished by the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority to and from certain ports and the assessment of operating deficiencies on certain municipalities and a county was not subject to the referendum. [771]

There was no unconstitutional impairment of the obligation of outstanding bonds of the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority by the enactment of St. 1956, c. 747, requiring the authority to furnish service to and from certain ports and changing the proportions of assessments of operating deficiencies upon certain municipalities and a county. [771]

On November 9, 1956, the Justices submitted the following answers to questions propounded to them by the Governor and Council.

To His Excellency the Governor and The Honorable Council of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions contained in your order adopted October 25, 1956, and transmitted to us on October 26.

The questions concern St. 1956, c. 747, entitled "An Act relative to assessments upon cities and towns served by the

New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority in the event of a deficit in the cost of service of said Authority, and providing for continuous service throughout the year." Section 1 amends St. 1948, c. 544, by inserting the following new § 5A: "The Authority shall provide adequate transportation of persons and necessaries of life for the islands of Nantucket and Martha's Vineyard throughout the year, and shall provide regularly scheduled ferry runs daily throughout the year of the type that will accommodate standard size trucks and semi tractor-trailer vehicles to and from the ports of New Bedford, Woods Hole, Vineyard Haven, and Nantucket, and adequate ferry slips or transfer bridges shall be constructed and maintained at said ports to facilitate and accommodate said vehicular traffic." Section 2 amends St. 1948, c. 544, by striking out the next to the last paragraph in § 9, and substituting therefor the following: "In case the commonwealth shall be called upon to pay the Authority any amount under this section, such amount with interest or other charges incurred in borrowing the money for the purpose, except such amounts as may be appropriated by the general court therefor, shall be assessed on the city of New Bedford and the towns of Falmouth and Nantucket and the county of Dukes county, in the following proportions, viz.: forty per cent on the city of New Bedford; ten per cent on the town of Falmouth; twenty per cent on the town of Nantucket; and thirty per cent on the county of Dukes county. The county commissioners of the county of Dukes county shall allocate such assessment upon said county to be paid severally by the towns in said county, excepting the town of Gosnold, in the same proportions as in the assessment of the county tax." Previously the percentages were: New Bedford fifteen per cent, Falmouth ten per cent, Nantucket twenty-five per cent, and the county of Dukes County fifty per cent.

The order recites that the effective date of c. 747 will determine whether the change in proportions of the assessments will affect the assessment of any deficiency in the

operations of the Authority for the year 1956; and that grave doubts as to the constitutionality of c. 747 involve the duty of the Governor and Council to approve any warrant for payment by the Commonwealth of such a deficiency. We are, accordingly, of opinion that a solemn occasion exists upon which the Governor and Council have authority to require the opinions of the Justices under c. 3, art. 2, of Part II of the Constitution.

From recitals in the order it appears that doubt as to the validity of c. 747 arises in part from these facts. On Saturday, October 6, 1956, the General Court laid before the Governor an enacted bill, being House, No. 690 of 1956, as amended, and thereafter on the same day the Governor, with the advice of the Council, prorogued the 1956 session of the General Court without approving the bill. On Thursday, October 11, 1956, the Governor signified his approbation by placing his signature on the bill, which became St. 1956, c. 747.

The questions are as follows:

"1. Under Article II of Section I of Chapter I of Part the Second of the Constitution of the Commonwealth and Article I of the Amendments thereto may a bill become law which is signed by the Governor after prorogation of the General Court but within five days after it has been laid before him for his revisal?

"2. Is said Chapter 747 of the Acts of 1956 one which may not be made the subject of a referendum petition under Article XLVIII of the Amendments to the Constitution, The Referendum, III, Section 2, on the grounds that it is restricted in its operation to a particular town, city or other political subdivision or to particular districts or localities of the Commonwealth?

"3. Since bonds of the Authority authorized by Chapter 544 of the Acts of 1948, as previously amended, have been issued and are outstanding, is said Chapter 747 of the Acts of 1956 an unconstitutional impairment of the contract represented by said bonds, because of:

"(a) the provisions of Section 1 of said Chapter 747 of the Acts of 1956, changing the powers and duties of the Authority, or

"(b) the provisions of Section 2 of said Chapter 747 of the Acts of 1956 changing the proportion of assessments to be made by the Commonwealth for deficiencies in operations of the Authority?"

Question 1 raises a point which has not been adjudicated in any decision of the Supreme Judicial Court. In *Opinion of the Justices*, 3 Mass. 567, the Justices in 1791 advised the Senate that under the Constitution of the Commonwealth a bill or resolve laid before the Governor less than five days before the "recess" of the General Court was not to have the force of law. The opinion stated, "If by *recess* in this question is meant a recess after a prorogation or recess after an adjournment, where there is no subsequent meeting of the same General Court on that adjournment, we are clearly of opinion that such bill or resolve has *not* the force of law" (page 567). It was further answered that a bill or resolve takes effect if it remains before the Governor five days (apparently legislative days) in the aggregate before and after an interim adjournment preceding final prorogation, "for all the days of the Court's sitting are but *one session*, although an adjournment intervenes" (page 568). Without further reasoning the opinion concluded, "When a prorogation takes place, the session is ended, and a bill or resolve, *after the session is ended*, cannot acquire the force of law" (page 568).

Under c. 1, § 1, art. 2, of the Constitution, which is the same now as it was in 1791, "No bill or resolve of the senate or house of representatives shall become a law, and have force as such, until it shall have been laid before the governor for his revisal; and if he, upon such revision, approve thereof, he shall signify his approbation by signing the same. But if he have any objection to the passing of such bill or resolve, he shall return the same, together with his objections thereto, in writing, to the senate or house of

representatives, in whichsoever the same shall have origi-
nated. . . . And in order to prevent unnecessary delays,
if any bill or resolve shall not be returned by the governor
within five days after it shall have been presented, the same
shall have the force of a law."

In 1821 there was adopted art. 1 of the Amendments:
"If any bill or resolve shall be objected to, and not approved
by the governor; and if the general court shall adjourn
within five days after the same shall have been laid before
the governor for his approbation, and thereby prevent his
returning it with his objections, as provided by the consti-
tution, such bill or resolve shall not become a law, nor have
force as such."

Article 1 of the Amendments relates to the situation
where the bill is not signed by the Governor, and is with-
out present application. See Journal of 1820–1821, Con-
stitutional Convention (1st ed.) 54, (2d ed.) 97. That
seems to have been the situation in *Opinion of the Justices*,
3 Mass. 567, but it must be conceded that the actual lan-
guage there used tends to support a negative answer to
Question 1.

There have been, however, two opinions of Attorneys
General which subsequently gave an affirmative answer to
Question 1. The first was by Attorney General Knowlton
in 1894. 1 Op. Atty. Gen. 168. That opinion failed to cite
*Opinion of the Justices*, 3 Mass. 567, and indeed stated,
"The question has not been passed upon in this State, al-
though I cannot learn upon inquiry that any Governor has
ever signed a bill after the Legislature adjourned" (page
169). Attorney General Knowlton advised the Governor
that the weight of authority elsewhere favored the view
that the Governor could sign a bill after prorogation but
within five days after submission to him; that usage in
this Commonwealth, so far as there was a usage, was other-
wise; and that to delay action until after prorogation might
"involve serious, and to some extent, doubtful, questions
of law" (pages 170–171).

The second opinion was by the present Attorney General under date of October 18, 1956, and was made to the Secretary of the Commonwealth with respect to the statute now before us. The opinion quoted the Secretary as stating, "A search of precedents indicates that no measure has been approved by a governor and filed in this office after the prorogation of the General Court since the effective date of Article I of the Amendments to the Constitution, June 5, 1821." The opinion reviewed Massachusetts and Federal authorities and concluded by advising the Secretary that House, No. 690, as amended, has the force of law and should be given a chapter number and published as a law of the Commonwealth.

We agree with the opinions of the Attorneys General. We think that the reasonable conclusion is that the Governor does have power to sign a bill after prorogation of the Legislature and within five days after presentation to him. To hold otherwise would offer the alternative of a hurried examination of legislation immediately prior to prorogation or a complete waste of legislative effort with respect to bills which upon examination after prorogation might impress the Governor as worthy of approbation. In some circumstances five days might be little enough time, but here the Governor did sign the bill within five days after presentation, and our answer is confined to that situation. We, of course, make no intimation whether by implication the Governor is limited to five days from presentation in signing a bill after prorogation. See *People* v. *Bowen*, 21 N. Y. 517, 519–520.

The Legislature has no duties with respect to the act of the Governor in approving legislation. Bills which are signed are not to be returned. His act of approval, although a part of the legislative process, is performed by him alone. The Constitution allows for his consideration five days, a period which the Legislature has no power to shorten. *Tuttle* v. *Boston*, 215 Mass. 57, 59–60. *Opinion of the Justices*, 291 Mass. 572, 576. See *Galligan* v. *Leonard*, 204 Mass. 202, 205–206. See also *The Pocket Veto Case*, 279 U. S.

655, 677–678; *Wright* v. *United States*, 302 U. S. 583. We are unaware of any theory of government or of any practical consideration which would justify importing into our Constitution a prohibition, implied simply from the fact that the Legislature has in a sense gone out of existence, which serves to shut off the Governor's power to approve bills. The President's power to sign bills under the Federal Constitution does not cease with the adjournment of Congress. *Edwards* v. *United States*, 286 U. S. 482, 492–493. *United States* v. *Kapsalis*, 214 Fed. (2d) 677, 681–683 (C. A. 7), certiorari denied sub nomine *Robinson* v. *United States*, 349 U. S. 906. *United States* v. *Pruitt*, 121 Fed. Sup. 15, 24–25 (D. C. S. D. Texas), affirmed sub nomine *Pruitt* v. *United States*, 217 Fed. (2d) 648 (C. A. 5), certiorari denied 349 U. S. 907. The great weight of authority in other States is in accord with the conclusion we reach. See cases collected in note in 64 A. L. R. 1468.

That the Governor with the advice of the Council prorogued the Legislature on the day that the bill had been laid before him is an irrelevant consideration.

Our answer to Question 1 is "Yes."

We answer Question 2 "Yes." The act is not subject to referendum. The subject is fully covered by what was recently said in *Opinion of the Justices, ante,* 721, 743–744.

We answer Question 3 (a) and 3 (b) "No." This subject was also recently covered by what was said in *Opinion of the Justices, ante,* 721, 737, 740–741.

Mr. Justice Cutter, before his appointment as a Justice of the court, was a member of a law partnership, certain members of which, other than himself, then represented or advised the Authority and have continued to do so. He therefore asks to be excused from answering these questions.

> RAYMOND S. WILKINS.
> JAMES J. RONAN.
> JOHN V. SPALDING.
> HAROLD P. WILLIAMS.
> EDWARD A. COUNIHAN, JR.
> ARTHUR E. WHITTEMORE.