New Bedford *v.* New Bedford, Woods Hole, &c., Steamship Authority.

CITY OF NEW BEDFORD *vs.* NEW BEDFORD, WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY & others.

Bristol.    December 3, 1957. — January 15, 1958.

Present: RONAN, SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.   Constitutional Law,* Obligation of contracts, Due process of law, Opinions of the Justices, Police power. *Mandamus.*

A question dealt with in an advisory opinion of the Justices, upon arising in subsequent litigation, is considered by this court anew unaffected by the previous opinion. [655–656]

St. 1956, c. 747, requiring the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, created by St. 1948, c. 544, to operate its steamship line daily throughout the year to the port of New Bedford as well as its other ports and to provide facilities adequate for the accommodation of certain vehicles, did not affect the real security for payment of the principal and interest of the Authority's bonds afforded by the provisions of § 9 of the 1948 statute for ultimate assessment of deficiencies of the income and reserve fund of the Authority to meet the "cost of the service" upon the county, city and towns benefited by the operation of the line, and did not unconstitutionally impair the contractual rights or vested interests of the holders of the Authority's outstanding bonds. [657]

Bonds issued by the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority pursuant to St. 1948, c. 544, were purchased and held subject to exercise of the police power by the Commonwealth by enacting legislation, not impairing the contractual rights or vested interests of the bondholders, to secure the furnishing of adequate service by the Authority. [657–658]

There was no error in denying requests for rulings that a writ of mandamus should not issue commanding the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority and its members to comply with the provisions of St. 1956, c. 747, on the grounds that bills were pending in the Legislature on matters similar to those contained in c. 747, or that c. 747 was vague, or that the court would be warranted in refusing to issue the writ as a matter of discretion. [658]

An order for judgment in a mandamus proceeding commanding the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority and its members "to comply with the provisions of" St.

1956, c. 747, "by taking such steps as may be reasonable and necessary to carry out the intent and purposes of the legislative mandate" was too broad where only two specific phases of service were involved in the proceeding; the order must be reframed and confined to those two particular matters. [658]

PETITION for a writ of mandamus, filed in the Superior Court on January 17, 1957.

The case was heard by *Nagle, J.*

*Robert G. Dodge, (Harold S. Davis & Herbert P. Wilkins* with him,) for the respondents New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority and others.

*George M. Poland, (Ella M. Dolan* with him,) for the respondent Backus.

*William B. Perry, Jr.,* Assistant City Solicitor, *(Bernard Kestenbaum,* Assistant City Solicitor, with him,) for the petitioner.

RONAN, J. These are exceptions taken by the respondents comprising a public board created by St. 1948, c. 544, and known as New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, three of its individual members, and three intervening banks who are owners of bonds issued by the board, to an order for judgment entered upon this petition for a writ of mandamus commanding the board and its five individual members "to comply with the provisions of c. 747 of the Statutes of 1956 by taking such steps as may be reasonable and necessary to carry out the intent and purposes of the legislative mandate," and to the denial of requests for rulings. There is another bill of exceptions filed by one Backus, a member of the board, who, with two fellow members included in the petition already mentioned, voted not to carry out the provisions of said c. 747. The questions presented by both bills of exceptions arose from the said vote of the board and will be considered together.

A brief summary of the provisions of St. 1948, c. 544, in so far as they pertain to the questions now presented, will show its purpose and the method adopted to accomplish it. By

§ 1 the Authority was created "to provide adequate transportation of persons and necessaries of life for the islands of Nantucket and Martha's Vineyard," and was "empowered to purchase, construct, maintain and operate necessary vessels, docks, wharves . . . and to issue its revenue bonds payable solely from revenues, or funds as hereinafter authorized in section nine of this act." Section 2 provides, "Steamship bonds issued under the provisions of this act shall not be deemed to constitute a debt of the commonwealth, nor a pledge of the faith and credit of the commonwealth, but the bonds shall be payable solely from the funds herein provided therefor. All such bonds shall contain on the face thereof a statement to the effect that neither the Authority nor the commonwealth shall be obligated to pay the same, or the interest thereon *except as herein provided* [emphasis supplied], and that the faith and credit of the commonwealth are not pledged to the payment of the principal or of the interest on such bonds." Section 3 provides for the appointment and removal of the members of the Authority, § 4 supplies definitions, § 5 enumerates the general powers conferred on the Authority and defines "cost of the service" to include "interest and amortization . . . on bonds or notes of the Authority issued under this act," and § 6 provides for the issuance of steamship bonds and empowers the Authority to designate their form and the signatures on their faces and the use of their proceeds. It is this last provision that contains the statement upon which the interveners rely and which reads as follows: "While any bonds issued by the Authority remain outstanding, the powers, duties or existence of the Authority shall not be diminished or impaired in any way that will affect adversely the interests and rights of the holders of such bonds." Section 6 also provides against competition by another steamship line, while § 7 provides for an exemption from taxation. Section 8 provides for the building up of a reserve fund for the payment of interest and redemption of the bonds. Section 9 provides that when income is insufficient to meet "the cost of the service" the reserve fund shall be used to

make up the deficiency and if the reserve fund at the end of any year is insufficient therefor the Treasurer of the Commonwealth shall pay over to the Authority the amount of the deficiency less the amount in the reserve fund. In turn the Commonwealth is to be reimbursed for such payment in certain proportions by the county, city and towns benefited by the operation of the steamship line. Section 16 states that the act, being necessary for the welfare of the Commonwealth, should "be liberally construed to effect the purposes thereof," and by § 18 all inconsistent general and special laws shall be deemed inapplicable. There is a provision in the contract between the bondholders and the Authority calling for the use of surplus funds from time to time to redeem bonds.

The interveners are three banks owning $643,000 of the bonds of the Authority, all issued prior to the enactment of St. 1956, c. 747. An issue in 1949 which amounted to $4,100,000 was used to acquire the property of an existing steamship line, to improve the same, and to maintain the newly acquired property. A second issue of $2,000,000 was made in 1955 to enable the Authority to pay for the construction of a new ferry type vessel which was ordered in that year. A third issue of $250,000 was made in 1957 to complete the new vessel, and $100,000 has been made available, if necessary, to make a ferry slip at New Bedford for the use of the new vessel when it should arrive and be put in service. Nearly the total amount of these bonds is outstanding.

It appeared in evidence that the budget of the Authority for 1957 shows an anticipated deficit of $340,000 and that the reserve fund of $200,000 provided for in St. 1948, c. 544, has been exhausted. The actual cost figures of the Authority for 1956 show a deficit in cost of service in that year of $111,918.33 and a deficit in every year of operation except the first, 1949.

The respondents in the first bill of exceptions stated exceptions to the failure of the judge to give three requested rulings which were as follows: "4. The provisions of St. 1948, c. 544,

inserted for the protection of the future buyers of the bonds and to facilitate the sale of the bonds at low rates of interest and the accomplishment of the purposes of the Commonwealth, constitute a contract between the Commonwealth and the bondholders, the obligation of which cannot be impaired by legislation. 5. Statute 1956, c. 747, is invalid under § 10 of art. 1 of the United States Constitution. 6. Statute 1956, c. 747, is invalid under both the Federal and the Massachusetts Constitutions as taking property of the bondholders without compensation in that it defeats or substantially impairs rights vested in the bondholders under St. 1948, c. 544."

The respondents contend that § 6 of the 1948 act, providing that "While any bonds issued by the Authority remain outstanding, the powers, duties or existence of the Authority shall not be diminished or impaired in any way that will affect adversely the interests and rights of the holders of such bonds," forbids the enactment of St. 1956, c. 747. They contend that the bondholders are so affected by this statute, which so far as material reads as follows: "The Authority shall provide adequate transportation of persons and necessaries of life for the islands of Nantucket and Martha's Vineyard throughout the year, and shall provide regularly scheduled ferry runs daily throughout the year of the type that will accommodate standard size trucks and semi tractor-trailer vehicles to and from the ports of New Bedford, Woods Hole, Vineyard Haven, and Nantucket, and adequate ferry slips or transfer bridges shall be constructed and maintained at said ports to facilitate and accommodate said vehicular traffic."

The parties direct attention to *Opinion of the Justices*, 334 Mass. 765, where it was stated that St. 1956, c. 747, changing the powers and duties of the Authority by requiring the daily operation of the steamship, was not an unconstitutional impairment of the contract represented by the bonds which had previously been issued under St. 1948, c. 544. Such opinions are given by members of this court in performance of a duty imposed upon them as individual advisers by the

Constitution, Part II, c. 3, art. 2. They are not precedents binding upon the court and do not come within the doctrine of stare decisis. We consider the same question anew when it arises in subsequent litigation unaffected by the previous opinion. *Commonwealth* v. *Welosky,* 276 Mass. 398. *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 245. *Lincoln* v. *Secretary of the Commonwealth,* 326 Mass. 313.

The respondents point out that the opinion in 334 Mass. 765 was qualified by reference to the prior *Opinion of the Justices,* 334 Mass. 721, in respect of the Massachusetts Port Authority, where we said in effect that the power of revocation and amendment in respect of the charter of a public corporation having aspects of a municipal corporation was not unlimited, that property cannot be taken without compensation or due process of law, and that the statute creating the Port Authority would be subject to revocation and amendment which "would not defeat or substantially impair without compensation rights vested under the statute" (page 738). We deal below with the respondents' contentions that contractual rights have been impaired and property taken without due process by the 1956 statute.

The Authority was a purely public corporation and not designed for profit, and was created as a governmental instrumentality to accomplish a public undertaking. The act of 1948 did not create a contract between the Commonwealth and the Authority but created a relationship more nearly like that existing between the Commonwealth and a municipal corporation an impairment of which would not be violative of the contract clause, art. 1, § 10, of the Federal Constitution. See *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Broadhurst* v. *Fall River,* 278 Mass. 167; *Commonwealth* v. *Hudson,* 315 Mass. 335; *Mayor of Gloucester* v. *City Clerk of Gloucester,* 327 Mass. 460.

Prior to the enactment of St. 1956, c. 747, it was decided that whether the Authority was required to operate the steamship line during the winter months rested with the Authority and was a mere administrative detail, and that we could not interfere in the absence of a showing that the

action of the Authority was capricious, whimsical or arbitrary. *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket Steamship Authority*, 330 Mass. 422. It was apparently as a result of this decision that the operation of the line to and from New Bedford was suspended during the winter of 1955–1956.

It is manifest that the 1956 statute altered the duty of the Authority in respect of the determination of whether to suspend service to and from New Bedford, seasonally. So far as this may mean that the annual deficit is increased over what it would be if the Authority retained a freer hand over the New Bedford service, this can mean that there will be less chance of there being a surplus of earnings which can be used to retire the bonds. There is therefore the possibility that some bonds which would otherwise be retired in advance of the due date will not be paid off until that date. There may be other ways, as the respondents suggest, in which the total of assets on hand at any one time will be affected, with consequent effect on the total security of the bondholders. But we do not think that the contractual rights or vested interests of the bondholders have thereby been substantially impaired. Payment of interest on and amortization of the bonds are included in the cost of service. Any deficiency of the reserve fund to meet such cost must be advanced by the Commonwealth and repaid by the taxing district to the Commonwealth. This is the real security underlying the business operation which the bonds have financed. We do not think that the changes in security position which are caused by the 1956 statute materially affect the value of the bonds or the certainty of payment of principal or interest.

We think that the power of the Legislature was not restricted in respect of changing the powers and duties of the Authority by requiring winter operation and the building of a ferry slip if the public need required such change. The hand of the Legislature was not stayed if it was found that the Authority was failing to supply adequate service. In view

of the assurance against loss given in the provisions for reimbursement of deficits it is clear, we think, that the Commonwealth has not by the underlying statute of 1948 restricted its powers to act in the interest of the public to secure adequate transportation.   The bonds, in the circumstances, were held subject to the possible exercise of this police power and there is no absence of due process in its exercise here.   For cases on the police power generally see *Opinion of the Justices*, 334 Mass. 721; *Delaware & Hudson Co.* v. *Boston Railroad Holding Co.* 323 Mass. 282,[1] 289–294; *Opinion of the Justices*, 293 Mass. 589, 600–601; *Home Building & Loan Association* v. *Blaisdell*, 290 U. S. 398, 424–438; *Veix* v. *Sixth Ward Building & Loan Association of Newark*, 310 U. S. 32, 37–38.   Compare *Opinion of the Justices*, 300 Mass. 607; *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528, 549.

There was no error in the refusal to give the requests for rulings of the Authority and the bondholders.

There was no error in denying the three requests of Backus for rulings that the writ should not issue while bills were pending on similar matters in the Legislature, or because c. 747, the basis of the instant proceeding, is too vague, or because the Superior Court would be warranted in its discretion to refuse to issue the writ.   Chapter 747 was couched in definite terms, mandatory in its object, specific as to the means by which it was to be attained and leaving little, if anything, to the judgment of the Authority.   *Massachusetts Society of Graduate Physical Therapists, Inc.* v. *Board of Registration in Medicine*, 330 Mass. 601, 605–606.

The scope of the order for judgment which was in general to comply with St. 1956, c. 747, was too broad.   Only two specific subjects were before the court, that is, winter service and the construction of a ferry slip.   The order should be reframed and confined to these two particular matters and as so moulded should be affirmed.

*Exceptions overruled.*

[1] Appeal dismissed sub nomine *Boston Railroad Holding Co.* v. *Delaware & Hudson Co.* 336 U. S. 932.