TOWN OF BARNSTABLE & others *vs.* WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY & others.

Barnstable. December 7, 1961. — February 26, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & SPIEGEL, JJ.

*Woods Hole, Martha's Vineyard and Nantucket Steamship Authority. Administrative Matter.*

The Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, subject to the conditions and powers contained in St. 1960, c. 701, continues the public transportation to the ports except New Bedford served by its predecessor, the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, abolished by § 16 of c. 701. [681–682]

The Woods Hole, Martha's Vineyard and Nantucket Steamship Authority is not authorized by St. 1960, c. 701, to provide transportation to either of the islands of Martha's Vineyard and Nantucket from the town of Barnstable. [684]

A determination that action by a public board is unauthorized by law makes the board's findings of fact immaterial and renders unnecessary inquiry whether the action would be within the board's administrative discretion or would be arbitrary, capricious, or whimsical. [683]

BILL IN EQUITY, filed in the Superior Court on March 22, 1961.

The suit was heard by *Forte, J.*

*Kenneth E. Wilson,* for the town of Barnstable, (*John P. Sylvia, Jr.,* for the town of Falmouth, with him).

*Roger F. Turner,* for Howard F. Peak and others, intervening plaintiffs.

*Richard I. Bailen,* for S. Volpe & Co. Inc.

*Lewis H. Weinstein,* (*Laurence S. Fordham* with him,) for Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.

*Douglas Danner,* for William H. Gulliver, Jr., intervening plaintiff, submitted a brief.

*Roy E. Sanguinetti,* for the town of Nantucket, submitted a brief.

*Francis X. Hurley,* for the County of Dukes County, submitted a brief.

*Daniel J. Fern,* by leave of court, submitted a brief as amicus curiae.

WILKINS, C.J.   The town of Barnstable and the town of Falmouth, in which is located Woods Hole, seek declaratory relief under G. L. c. 231A against Woods Hole, Martha's Vineyard and Nantucket Steamship Authority and its three members to determine the right of the Authority to furnish transportation from Barnstable to either of the islands of Martha's Vineyard or Nantucket.  S. Volpe & Co. Inc. (Volpe) has been made a party defendant.  Volpe proposes to build a pier in Hyannis harbor, which is in Barnstable, for lease to the Authority.  In this aspect various binding declarations are sought, such as whether the Authority or Volpe is subject to (1) the zoning by-law of Barnstable or (2) the waterways jurisdiction of the State Department of Public Works under G. L. c. 91.  Six owners of real estate in Barnstable have intervened as parties plaintiff, and the town of Nantucket[1] and the County of Dukes County have been permitted to intervene as parties defendant.  The

---

[1] The town of Nantucket, after filing a motion which merely sought to intervene, has taken the position of a defendant.

676                                        343 Mass. 674

Barnstable *v.* Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.

judge filed a statement of the material facts found by him. A final decree was entered declaring that the Authority (1) has power to operate between Hyannis and the islands; (2) has discretion to choose the points on the mainland of the Commonwealth from which to serve the islands, subject to St. 1960, c. 701; (3) is not acting arbitrarily, capriciously or whimsically in seeking to operate between Hyannis and Nantucket in the summer season; (4) having determined that the provision for service by it is necessary and desirable to effectuate the purposes of St. 1960, c. 701, the court may not substitute its judgment for that of the Authority; (5) is not subject to the zoning by-law of the town of Barnstable; and (6) is not subject to the jurisdiction of the Department of Public Works under G. L. c. 91. The decree also declared that Volpe in constructing a pier or wharf and other facilities for use by the Authority is not subject to the zoning by-law or the jurisdiction of the Department of Public Works, and that St. 1851, c. 221,[1] has no vitality. The plaintiff towns, the individual interveners, and Volpe appealed. The evidence is reported.

We need not pause to discuss whether the individual interveners are strictly parties. See *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 330 Mass. 422, 424–425. All questions are adequately raised by those who are undoubtedly parties.

The Authority dates from St. 1960, c. 701, entitled, "An Act creating the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, defining its powers and duties, abolishing the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority and transferring its assets and liabilities to said newly created authority." The Authority thereby abolished (New Bedford Authority) was created by St. 1948, c. 544, and its powers and duties were described therein and amended by St. 1949, c. 142; St. 1954, c. 449; St. 1954, c. 499; St. 1954, c. 622; and St. 1956, c. 747.

---

[1] This authorized the Cape Cod Branch Railroad Company to build a pier or wharf in Hyannis harbor.

343 Mass. 674                                         677

Barnstable *v.* Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.

The purpose of St. 1948, c. 544, was stated in the preamble to be "to provide without delay adequate transportation facilities between New Bedford, Falmouth and the islands of Martha's Vineyard and Nantucket." New Bedford Authority was authorized to purchase from Massachusetts Steamship Lines, Incorporated, which operated a steamship line between New Bedford, Falmouth, Martha's Vineyard, and Nantucket, all its property, and to operate the line when purchased. St. 1948, c. 544, §§ 5, 13. The property was purchased, and in May, 1949, New Bedford Authority began to operate the steamship line and to provide transportation facilities between New Bedford, Falmouth, and the islands. *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 329 Mass. 243, 245.

Various questions concerning New Bedford Authority soon began to come before this court. In *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 329 Mass. 243, it was held that New Bedford Authority was not one of the agencies which the Department of Public Utilities is authorized to supervise and regulate under G. L. c. 159, but that the department's control was limited by St. 1948, c. 544, § 5 (c), to disapproving rates which New Bedford Authority might fix (pp. 247–250). In *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 330 Mass. 422, we held that New Bedford Authority could not abandon any of the ports mentioned in c. 544 (New Bedford, Falmouth, and the islands) but could for cause suspend service at New Bedford in the slack season (p. 433). In *County of Dukes County* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 333 Mass. 405,[1] this court refused to disturb a failure of New Bedford Authority to suspend service at New Bedford.

The operation of the line to and from New Bedford was suspended during the winter of 1955–1956. See *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard &*

---

[1] *Opinion of the Justices*, 334 Mass. 765, is of no present materiality.

*Nantucket S.S. Authy.* 336 Mass. 651, 657. This was followed by the passage of St. 1956, c. 747, entitled, ''An Act relative to assessments upon cities and towns served by the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority in the event of a deficit in the cost of service of said authority, and providing for continuous service throughout the year.'' It amended St. 1948, c. 544, in two respects.   (1) A new § 5A was inserted, reading, ''The Authority shall provide adequate transportation of persons and necessaries of life for the islands of Nantucket and Martha's Vineyard throughout the year, and shall provide regularly scheduled ferry runs daily throughout the year of the type that will accommodate standard size trucks and semi tractor-trailer vehicles to and from the ports of New Bedford, Woods Hole, Vineyard Haven, and Nantucket, and adequate ferry slips or transfer bridges shall be constructed and maintained at said ports to facilitate and accommodate said vehicular traffic.''   (2) The percentages of the assessments to cover any amount the Commonwealth might be called upon to pay under § 9 to make up a deficiency of income to meet cost of service were changed: New Bedford from 15 to 40%; Nantucket from 25 to 20%; County of Dukes County from 50 to 30%.[1]   Falmouth remained at 10%.   See St. 1948, c. 544, § 9.

Our basic decision hinges upon the proper interpretation of St. 1960, c. 701.   Section 1, as in substance did St. 1948, c. 544, § 1, says that, ''In order to provide adequate transportation of persons and necessaries of life for the islands of Nantucket and Martha's Vineyard, the Authority is hereby authorized and empowered to purchase, construct, maintain and operate necessary vessels, docks, wharves . . .'' and so forth.   Section 3 creates the Authority a body corporate and a public instrumentality which is to consist of three persons to be appointed for three year terms as

---

[1] The county commissioners were to continue to allocate the assessment upon the towns of the County of Dukes County, other than Gosnold, in the same proportions as the assessment of the county tax.   Gosnold is not in a location to benefit from the project.   *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 330 Mass. 422, 427n.

343 Mass. 674                                                              679

Barnstable *v.* Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.

follows: a resident of Nantucket by the selectmen; a resident of the County of Dukes County by the county commissioners; and a resident of Falmouth by the selectmen. A quorum is two with full power to act. Under the earlier statute the Authority had five members appointed by the Governor, with the advice and consent of the Council. They were all required to be residents of the Commonwealth, one of Nantucket, one of Martha's Vineyard, one of New Bedford, and one of Falmouth. The local residence of the fifth, to be designated chairman, was not prescribed. St. 1948, c. 544, § 3.

Section 4 (a) empowers the Authority "To acquire, maintain, repair and operate a steamship line." This is similar to St. 1948, c. 544, § 5 (a). Section 4 (e) empowers the Authority, among other things, "to contract by license, lease, charter or other arrangement for the provision of excursion service by other persons to and from the islands of Martha's Vineyard and Nantucket from any point on the mainland of the commonwealth, when it shall be deemed necessary or desirable to serve the purposes of this act." This section has no counterpart in the previous legislation, and is a main reliance of the Authority before us.

In § 5, relating to the issue of bonds of the Authority, we read, "Except as provided in this act no person shall operate a vessel of more than one hundred gross tons for the carriage of passengers, vehicles or freight for hire by water between the mainland of the commonwealth and the island of Martha's Vineyard or the island of Nantucket or between said islands unless licensed or permitted in writing so to do by the Authority." Apart from the written authorization, this resembles a provision in St. 1948, c. 544, § 6.[1]

Section 6, entitled "Exemption from Taxation," provides: "The exercise of the powers granted by this act will be in all respects for the benefit of the people of the com-

---

[1] Statute 1948, c. 544, § 6, reads: "While any bonds issued by the Authority remain unpaid, no person shall operate a vessel of more than one hundred tons gross tonnage to carry by water passengers or freight between the mainland of the commonwealth and the islands of Martha's Vineyard and Nantucket . . .."

monwealth, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of the steamship line by the Authority will constitute the performance of essential governmental functions, the Authority shall not be required to pay any taxes or assessments upon any property acquired or used by the Authority under the provisions of this act or upon the income therefrom . . . ." This is very much like St. 1948, c. 544, § 7.

In § 9 any deficiency paid by the Commonwealth is to be assessed, beginning with any deficiency for the calendar year 1961, as follows: Falmouth 10%; Nantucket 40%; and County of Dukes County 50%, to be allocated as before. Section 14 creates a finance advisory board consisting of three members, elected one each by the voters of Falmouth, Nantucket, and the county. The "board shall have the power to review the annual budget of the Authority and advise the Authority members concerning any financial aspect of the operation of the Authority, and may limit or modify any advertising expenditures."

Section 16 abolishes New Bedford Authority, and vests all its assets in the new Authority, which is caused to assume all its indebtedness and liabilities. Also by § 16 nothing contained in St. 1960, c. 701, or in St. 1948, c. 544, and its amendments "shall be deemed or construed to require that said . . . Authority provide ferry runs or transportation of passengers, vehicles or freight to or from any point on the mainland of the commonwealth to or from any other such point or to or from the islands of Martha's Vineyard or Nantucket; provided, however, that except in cases of emergency or necessity ferry runs or such transportation shall be provided to and from the port of Woods Hole to and from said islands." Section 17 is, "This act, being necessary for the welfare of the commonwealth and its inhabitants, shall be liberally. construed to effect the purposes thereof." By § 20 the effective date is made January 1, 1961.

If the respective titles of the two statutes are of assistance, they tend to show that the practical scope of the

343 Mass. 674                                              681

Barnstable v. Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.

project has been reduced by the omission of New Bedford from the title of St. 1960, c. 701. The 1960 statute, as the Authority points out, does not expressly limit the Authority to service out of a single mainland port, any more than did the 1948 statute. It is urged that no such limitation should be implied because there is the statutory purpose to provide transportation for the islands in § 1, and because there are references to service between the mainland and the islands in §§ 4 (e), 5, and 16.

As we have noted, § 1 is the same in substance as St. 1948, c. 544, § 1. We also note that no reference to Hyannis or Barnstable is to be found in either statute. So far as appears, neither Authority has hitherto furnished service at Hyannis. New Bedford Authority furnished service between the places named in the title to the act. These were the same places upon which deficiencies were assessed, and each had a member of the Authority.

It seems to us that the 1948 statute contemplated the continuation of the service hitherto furnished by Massachusetts Steamship Lines, Incorporated. As was said in *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 330 Mass. 422, 429–430, "It is further apparent from the engineers' report to the commission, the commission's report to the Legislature, and the act itself that it was expected that the authority would acquire and continue to operate the existing line, including service to all of the ports previously served." In stating (p. 427) that any service for the islands "must have one or more termini on the mainland," we did not, of course, say that there must be more than one such terminus.

Until the present attempt, no service has been rendered at any place not subject to the assessment of a percentage of the deficiencies and unrepresented on the Authority membership. The only places assessed by St. 1960, c. 701, § 9, are Falmouth and the islands, which are the only places represented on the membership of the Authority. We are of opinion that the Authority, subject to the conditions and powers contained in the 1960 statute, is to continue the pub-

lic transportation to the ports except New Bedford served by the abolished New Bedford Authority.

Turning to the sections upon which the Authority relies, we observe that § 4 (e) provides for arrangements by the Authority "for the provision of excursion service by other persons to and from the islands . . . from any point on the mainland of the commonwealth." To us this means exactly what it says, namely, service by others. Moreover, the provision is for "excursion service," a phrase which is unique in this legislation and for which no definition is supplied. We need not undertake to determine the extent of service which is limited to "excursion service."

The Authority contends that it would be unsound to construe the act as authorizing others to do what it cannot do itself. We do not agree. The Authority membership no longer consists of five individuals (one of whom need not come from New Bedford, Falmouth, or the islands) appointed by the Governor, with the approval of the Executive Council, but is composed of three individuals, each a resident of, and locally appointed in, one of the three places designated in the title of the act. There has been added a finance advisory board, with unlimited powers of advice and a slight veto on expenditures, which is locally elected. We have not been convinced from the language of the act that the Legislature has given blanket authorization to an Authority with members of local origin and locally chosen to enter into any Massachusetts port, for example, Boston, Gloucester, or Plymouth, and to bring about the exemption of real estate from local taxation (§ 6), as well as to claim rights which transcend municipal zoning provisions.

Section 5 allows the Authority to license or permit in writing the operation of vessels of more than one hundred gross tons for the carriage of passengers, vehicles or freight by water between the mainland of the Commonwealth and either island or between the islands. We fail to see how such a license or permission to do something which was in large part previously prohibited while any of New Bedford Authority's bonds remained unpaid enlarges the operating authorization to the Authority.

343 Mass. 674                                          683

Barnstable *v.* Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.

Section 16, the Authority argues, would be unnecessary if the Authority did not have power to serve out of mainland ports other than Woods Hole. Stress is placed upon the provisions that none of the statutes we have been discussing should be construed to require ferry runs or transportation "to or from any point on the mainland of the commonwealth to or from any other such point or to or from the islands." This is followed by "provided, however, that except in cases of emergency or necessity ferry runs or such transportation shall be provided to and from the port of Woods Hole to and from said islands." A reasonable purpose of § 16 would be completely to preclude any contentions, such as previously arose with respect to New Bedford, as to any requirement to serve at any mainland port. It does not follow that shutting off controversy or litigation on this ground requires the construction that the Authority has such power. The entire § 16, including the proviso, lacks clarity. In view of the history relating to the ports served, the lack of clarity, to our way of reasoning, counts against the Authority and not for it.

Contrary to the contention of the Authority made in a footnote in its brief, we are of opinion that the purpose of reducing its deficit would not be a case of "necessity" under § 16.

Where the action of the Authority is not authorized, its findings of fact are immaterial, and related questions of business judgment or discretion of the Authority, or arbitrary, capricious, or whimsical action do not arise. See *County of Dukes County* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 333 Mass. 405, 409.

In conclusion, it seems to us that we are asked to fill in something which, on the Authority's contention, is an important gap in important legislation, something which is far outside the permissible bounds of the liberal construction enjoined by § 17. The precise action presently contemplated is the provision of summer service between Hyannis and Nantucket. But quite indistinguishable in

principle, as the Authority is forced to contend, would be an implied authorization to provide service throughout the year from either or both islands to every Massachusetts port, including New Bedford. If such was the legislative intent, the opportunity is at once available for obtaining its expression in terms which are clear and direct.

The final decree is reversed, and instead a new final decree is to be entered declaring that the defendant Woods Hole, Martha's Vineyard and Nantucket Steamship Authority is not authorized by St. 1960, c. 701, to provide service to the islands from the town of Barnstable.

*So ordered.*