Eastern Massachusetts Street Railway *v.* Massachusetts Bay Transp. Authy.

EASTERN MASSACHUSETTS STREET RAILWAY COMPANY *vs.*
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY
& others.

Suffolk.   February 7, 1966. — March 4, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL,
& REARDON, JJ.

*Mass Transportation. Massachusetts Bay Transportation Authority. Contract,* Validity.   *Carrier,* Of passengers.   *Words,* "Or."

The conditions stated in (i) and (ii) of G. L. c. 161A, § 3 (j), are alternatives; and where the Massachusetts Bay Transportation Authority contracted with municipalities outside its area to furnish them passenger train service covered by a contract previously made between the Authority and a railroad "part of whose operations were, at the time the [A]uthority was established, within . . . [its] area" as provided in (i), the contracts with the municipalities were valid under (j) irrespective of compliance with the condition stated in (ii).   [342–343]

In G. L. c. 161A, § 3 (j) (ii), respecting the furnishing of mass transportation service by the Massachusetts Bay Transportation Authority in certain areas "where no private company is otherwise providing such service," the words "such service" refer to mass transportation service of a kind and quality substantially similar to that to be provided by the Authority.   [344]

A bus company operating both within and outside the area of the Massachusetts Bay Transportation Authority was not aided by G. L. c. 161A, § 5 (k), in attacking the validity of contracts made under § 3 (j) by the Authority with municipalities outside its area to furnish them with passenger train service competing with the bus company's service. [344–345]

BILL IN EQUITY filed in the Superior Court on June 1, 1965.

The suit was heard by *Moynihan,* J.

*Timothy H. Donohue* for Eastern Massachusetts Street Railway Company.

*William D. Quigley* (*John J. Gilbody* with him) for Massachusetts Bay Transportation Authority.

*John E. O'Keefe* for Boston and Maine Corporation.

WILKINS, C.J.   In this bill in equity seeking declaratory relief under G. L. c. 231A, the plaintiff is Eastern Massa-

350 Mass. 340                                                          341

Eastern Massachusetts Street Railway *v.* Massachusetts Bay Transp. Authy.

chusetts Street Railway Company, a Massachusetts corporation (Eastern), and the defendants are the Authority, created as "a political subdivision of the commonwealth" by G. L. c. 161A, § 2, inserted by St. 1964, c. 563, § 18, the city of Lowell, the town of Billerica, and Boston and Maine Corporation (B & M). Lowell and Billerica are not among the seventy-eight cities and towns constituting the Authority. Eastern is authorized by the Department of Public Uilities to operate two routes as a common carrier by bus, one between Lowell and the Everett M.B.T.A. terminal and the other between Lowell and Boston by way of Billerica.[1]

The matter for determination is the validity of two contracts entered into by the Authority, one with Lowell and one with Billerica. From a final decree upholding their validity, Eastern appealed. The judge made findings from which are taken the facts hereinafter set forth. The evidence is reported.

B & M for many years had provided passenger train service between Boston and Lowell and between Boston and Billerica, most of which, on January 14, 1965, it was granted permission by the Interstate Commerce Commission to discontinue. Accordingly, passenger train service between Boston and Lowell was reduced to one train daily in each direction. Thereupon Eastern increased its bus service and, as a result, its gross revenues.

On December 14, 1964, the Authority, purporting to act under G. L. c. 161A, §§ 3 (f) and 23 (2), entered into a contract with B & M whereby B & M agreed to provide railroad passenger service as an independent contractor for the account of the Authority inside the Authority's territory and outside that territory as from time to time directed by the Authority. By an amending agreement, dated January 25, 1965, B & M agreed to provide train service within the Commonwealth under the original agreement, "despite certain contingencies qualifying its obligations under the

---

[1] Eastern's bus routes are roughly parallel to the railroad line, but the "running time for trains . . . between Lowell and Boston is about thirty minutes less than . . . [that] of the . . . buses."

original agreement." In March, 1965, the Authority, pur-
porting to act under G. L. c. 161A, § 3 (j), entered into two
transportation agreements, one with Lowell and one with
Billerica, whereby the Authority agreed to furnish to these
communities passenger train service by means of B & M's
facilities and equipment as provided in the original agree-
ment. Lowell and Billerica were required to pay the Au-
thority for the service "in accordance with a specified
formula."

The trial judge found that rail transportation furnished
under the two transportation agreements will compete with
Eastern's bus service and will cause economic damage to
Eastern. The declaration in the final decree is that the
Authority's contracts with Lowell and with Billerica are
valid exercises of the powers granted by G. L. c. 161A to
the Authority and do not violate c. 161A, §§ 3 (j), 5 (k),
and 5 (j).

A principal argument of the plaintiff is that the two
agreements with the defendant municipalities were in vio-
lation of G. L. c. 161A, § 3 (j) (ii). Section 3 expressly
grants the Authority power "(j) To operate mass trans-
portation facilities and equipment, directly or under con-
tract in areas outside the area constituting the authority;
but only pursuant to (i) an agreement with or purchase of
a private mass transportation company, part of whose oper-
ations were, at the time the authority was established,
within the area constituting the authority *or* [italics sup-
plied] (ii) an agreement with a transportation area or a
municipality for service between the area of the authority
and that of such transportation area or municipality, where
no private company is otherwise providing such service."
As to this the trial judge ruled, "The two conditions limit-
ing the power of the Authority to operate mass transporta-
tion facilities and equipment outside its own area are stated
in the alternative but I rule that both of these conditions
have been met by the Authority."

We agree with the quoted ruling of the judge. It was
manifestly correct. The plaintiff struggles to confine the

350 Mass. 340                                            343

Eastern Massachusetts Street Railway *v.* Massachusetts Bay Transp. Authy.

case to the second condition, and permits the first condition to go by default. The sum total of its argument is a non sequitur. The brief states: "Notwithstanding the alternative phrasing of the statute, the fact is that the Authority has entered into agreements with municipalities outside the area of the Authority for service between the area of the Authority and those municipalities." It then concludes: "Thus we are not concerned with whether the first condition of said section 3 (j) has been met." This argument collapses of its own weight. The word "or" is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise. *Commonwealth* v. *Keenan,* 139 Mass. 193, 194. *Gaynor's Case,* 217 Mass. 86, 89–90. *Marble* v. *Treasurer and. Recr. Gen.* 245 Mass. 504, 508–509. *Lunt* v. *Aetna Life Ins. Co.* 261 Mass. 469, 476. *Robertson* v. *Robertson,* 313 Mass. 520, 529. The present statutory context does not demand or even suggest other than a disjunctive meaning.

The purpose of G. L. c. 161A has been very recently discussed in *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.* 348 Mass. 538, 548: "The implicit mandate of the statute is to provide transportation when and where public convenience and necessity require it." See *Opinion of the Justices,* 337 Mass. 800, 806–807. "The Authority is that kind of agency of the sovereign for which broad general powers and standards are appropriate. See *Opinion of the Justices,* 334 Mass. 721, 739, 743." *Boston Safe* case, *supra,* 542–543. There is no relevance to the present issues in what the plaintiff quotes from *Barnstable* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 343 Mass. 674, 682–683, and *Commonwealth* v. *Massachusetts Turnpike Authy.* 346 Mass. 250, 255.

What we have said is enough to decide the case. The mass transportation service which the Authority is to furnish to Lowell and Billerica is pursuant to a contract with B & M "part of whose operations were, at the time the authority was established, within the area constituting the authority." § 3 (j) (i).

Were it necessary to uphold the judge's ruling that there was compliance with the second condition, we need but state our complete agreement with the judge's reasoning. The transportation service is to be furnished pursuant to an agreement between the Authority and each of the two municipalities for service between the area of the Authority and that of the municipalities "where no private company is otherwise providing such service." § 3 (j) (ii). We quote from the ruling of the judge. "Admittedly, the meaning of the words 'such service' is not wholly clear. The service referred to is mass transportation service. But I construe the word 'such' to mean that the Authority is precluded under clause (ii) from operating outside its own area only if a private company is providing mass transportation service of a kind and quality substantially similar to that called for in the agreement between the Authority and the municipality. I do not construe section 3 (j) (ii) as meaning that the Authority cannot contract with a municipality outside its own area for mass transportation service from Boston to the municipal area if a private company is furnishing any kind of mass transportation service between any part of Boston and the area of the contracting municipality." If the plaintiff's views were to prevail, the efforts of the Authority to carry out the statutory purpose would be severely hamstrung. The construction it seeks to impose would completely bar furnishing service in the area of any municipality where anyone could show some form of mass transportation prevailed. There would be a semantic victory over the dominating legislative purpose to benefit the public.

The plaintiff is not aided by G. L. c. 161A, § 5 (k), which reads in pertinent part: "Any private company lawfully providing mass transportation service in the area constituting the authority at the time the authority is established may continue so to operate the same route or routes and levels of service as theretofore . . . and provided, further, that whenever the authority desires to add new routes for service in any area, it shall give preference in the opera-

tion of such routes to the private carrier then serving such area . . . ."

As to this the trial judge concluded in part, "It is doubtful whether this paragraph has any application to a locality outside the area constituting the Authority." Eastern does not contest this conclusion, and merely urges that the legislative intention in § 5 (k), to protect private companies within their respective areas of the Authority, complements the protection given by § 3 (j) to private companies outside the area of the Authority. We agree. Our reading of § 3 (j) is not inconsistent with the protection given by the statute to private companies. It merely gives this protection its appropriate place in the statutory scheme.

We need not consider c. 161A, § 14, which is not cited by the plaintiff. The bill does not in terms seek relief in damages, and the plaintiff makes no argument on the issue beyond the bald demand that "the case be remanded to the Superior Court for determination of damages suffered by . . . Eastern . . . as a result of such illegal operations." Our conclusion is quite apart from the fact that no illegal operations have been shown.

*Decree affirmed.*